Monique SYKES et al., Plaintiffs,

v.

**MEL HARRIS AND ASSOCIATES, LLC, et al., Defendants.**

No. 09 Civ. 8486 (DC).

United States District Court, S.D. New York.

Dec. 29, 2010.

Emery Celli Brinkerhoff & Abady LLP, by: Matthew D. Brinckerhoff, Esq., Eisha Jain, Esq., Neighborhood Economic Development Advocacy Project, by: Susan Shin, Esq., Claudia Wilner, Esq., Josh Zinner, Esq., MFY Legal Services, Inc., by: Carolyn E. Coffey, Esq., Andrew Goldberg, Esq., Anamaria Segura, Esq., New York, NY, for Plaintiffs.

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, by: Brett A. Scher, Esq.,

New York, NY, for Mel Harris, Defendants.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, by: Adam R. Schwartz, Esq., New York, NY, for Leucadia, Defendants.

Babchick & Young, LLP, by: Jordan Sklar, Esq., White Plains, NY, for Samserv, Defendants.

### OPINION

CHIN, Circuit Judge:

In this case, eight plaintiffs allege that a debt-buying company, a law firm, a process service company, and others engaged in a "massive scheme" to fraudulently obtain default judgments against them and more than 100,000 other consumers in state court. Plaintiffs allege that defendants did so by engaging in "sewer service"—the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service. When the debtors failed to appear in court because they did not have notice of the lawsuits, defendants obtained default judgments against them.

Plaintiffs sue on behalf of themselves and all others similarly situated. Their second amended complaint (the "Complaint") asserts claims under the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., New York General Business Law ("GBL") § 349, and New York Judiciary Law § 487. Plaintiffs seek injunctive relief, declaratory relief, and damages.

Defendants move to dismiss the Complaint pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, challenging the sufficiency of every claim and the subject matter jurisdiction of this Court. For the reasons that follow,

the motions to dismiss are denied in part and granted in part.

### BACKGROUND

#### A. The Facts

The facts alleged in the Complaint are assumed to be true for purposes of this motion and may be summarized as follows:

#### 1. The Parties

Plaintiffs Monique Sykes, Ruby Colon, Rea Veerabadren, Fatima Graham, Kelvin Perez, Saudy Rivera, Paula Robinson, and Enid Roman ("plaintiffs") are New York City residents who allege that defendants conspired to fraudulently secure default judgments against them. Each named plaintiff was sued by defendants in state debt collection actions commenced between 2006 and 2009. (Compl. ¶¶ 120–37, 142–59, 164–81, 194–212, 222–39, 254–73, 277–94, 298–315). Default judgments were obtained against them. (Id.). All except Graham deny having received actual notice of the commencement of the actions against them. (Id.). Plaintiffs propose a class action on behalf of all victims of this purported scheme.

The three sets of defendants are a debt-buying company, a law firm, and a process service company, and their respective affiliates and associates.

Defendants L–Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 12, LLC, LR Credit 14, LLC, LR Credit 18, LLC, and LR Credit 19, LLC are wholly-owned subsidiaries of defendant Leucadia National Corporation ("LNC"). (See id. ¶¶ 28–34). All eight entities are primarily engaged in the business of purchasing and collecting on defaulted debts. (Id.). They, along with affiliated individuals, comprise the "Leucadia defendants."

Defendant Mel S. Harris and Associates, LLC ("Mel Harris, LLC") is a Manhattan

law firm primarily engaged in debt collection litigation on behalf of the Leucadia defendants and other debt-buyer clients. (*Id.* ¶¶ 3, 18–25). Also named as defendants are its principals and affiliated individuals (together, the "Mel Harris defendants"). (*Id.*).

Defendant Samserv, Inc. ("Samserv") is a process serving agency located in Brooklyn, New York. (*Id.* ¶¶ 36–44). Its chief executive officer, five individual process servers, and affiliated individuals are also named as defendants (together, the "Samserv defendants"). (*Id.*).

### 2. *The Debt–Buying Business*

Debt-buying companies typically purchase "portfolios" of defaulted debts for pennies on the dollar and then attempt to collect the full face value of the debts for themselves. (*Id.* ¶ 46). The debts are priced based upon recency: debt-buyers must pay more for "freshly charged-off" debts than older debts, which often include debts that others have unsuccessfully tried to collect. (*Id.* ¶ 47). An active market exists even for debts that are beyond the statute of limitations. (*Id.*).

A debt portfolio customarily contains account information for each consumer, including her name, account number, Social Security number, last known address and telephone number, charge-off date, date and amount of last payment, and the alleged amount owed. (*Id.* ¶ 48). When debt-buyers acquire these portfolios, however, they generally do not purchase documentation of the indebtedness between the original creditor and consumer, or they may purchase the documentation for only a small fraction of the accounts. (*Id.* ¶¶ 48–49). Thus, many debt-buyers have

limited proof of the validity of these debts. (*Id.* ¶ 50).

### 3. *The Alleged Scheme*

Plaintiffs allege that the Leucadia and Mel Harris defendants entered into joint ventures to purchase debt portfolios, pursued debt collection litigation *en masse* against the alleged debtors, and sought to collect millions of dollars in fraudulently obtained default judgments. (*Id.* ¶¶ 1, 3, 95, 97). In 2006, 2007, and 2008, they filed a total of 104,341 debt collection actions in New York City Civil Court. (*Id.* ¶ 96).[1] Assuming 260 business days a year, they filed an average of 133 debt collection actions per day.

The Leucadia and Mel Harris defendants regularly hired Samserv to serve process. (*Id.* ¶¶ 4, 98). They paid Samserv only for service attempts that were reported as completed and paid nothing for service attempts that were not reported as completed. (*Id.* ¶ 73). More than 90% of the individuals they sued did not appear in court; most defaulted because they were not actually served. (*Id.* ¶¶ 3–4; *see also id.* ¶¶ 3–4 69, 107).

Sewer service was integral to this scheme. After a consumer failed to appear in court, the Leucadia and Mel Harris defendants applied for a default judgment by providing the court with proof of service; proof of additional mailed notice to the consumer; an affidavit attesting to whether the consumer was in the military; and an "affidavit of merit" attesting to their personal knowledge of facts substantiating their legal claims to the court. (*Id.* ¶¶ 86–90, 108–10).

Leucadia had limited proof to substantiate its claims because it typically did not

---

1. The Leucadia defendants retained Mel Harris, LLC in more than 99% of these cases.

(Compl. ¶ 96).

purchase documentation of the consumers' indebtedness to the original creditors. (*Id.* ¶¶ 46–50). Nonetheless, the Mel Harris defendants' "designated custodian of records," Todd Fabacher, signed the vast majority of the approximately 40,000 affidavits of merit they filed each year. (*Id.* ¶¶ 110–17). Fabacher averred to having personal knowledge of the key facts establishing that the debt in each collection action was due and owing. (*Id.* ¶ 113). Assuming 260 business days a year, Fabacher had to have personally (and purportedly knowledgeably) issued an average of twenty affidavits of merit per hour, i.e., one every three minutes, over a continuous eight-hour day.

After obtaining the default judgments, the Leucadia and Mel Harris defendants proceeded to restrain plaintiffs' bank accounts, threatened to garnish their wages or seize their property, caused them to incur litigation costs, and impaired their credit, making it difficult for plaintiffs to obtain housing, employment, and loans. (*Id.* ¶¶ 7–8, 140, 162, 192, 212–17, 219, 240, 242, 244–46, 252, 275, 294–96, 315–17).

Government agencies have recognized that abusive debt collection practices are a public concern. In 2008, the New York City Department of Consumer Affairs held a public hearing on unethical debt-collector fee arrangements with process servers. (*Id.* ¶¶ 70, 72). Last year, the Federal Trade Commission issued a report that identified and discussed, inter alia, indus-try-wide problems with debt-buyers failing to substantiate their claims against consumers. (*Id.* ¶ 50).

### B. *Prior Proceedings*

Sykes commenced this action on October 6, 2009 against some of the Leucadia, Mel Harris, and Samserv defendants, alleging only FDCPA and New York GBL claims. On December 28, 2009, Colon, Veerabadren, and Graham joined the action as plaintiffs, and class allegations and RICO claims were added. Plaintiffs filed the "Complaint" on March 31, 2010, adding Perez, Rivera, Robinson, and Roman as plaintiffs and a Judiciary Law claim.

These three motions to dismiss followed, on behalf of each set of defendants.

### DISCUSSION

First, I address whether plaintiffs have sufficiently pled claims under the FDCPA, RICO, and state law. Second, I consider defendants' remaining arguments regarding the *Rooker–Feldman* doctrine, absolute privilege, the *Noer–Pennington* doctrine, and piercing the corporate veil.

### A. *Plaintiffs' Claims*

#### 1. *The FDCPA Claims*

Defendants move to dismiss plaintiffs' FDCPA claims pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[2] The FDCPA for-

---

**2.** To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* — U.S. ——, 129 S.Ct.1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). First, a court considering a motion to dismiss must accept plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor. *See id.*; *Vietnam Ass'n for*

*Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir.2008). Second, the court determines whether the allegations "plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. at 1950. A plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). Dismissal of a complaint under Rule 12(b)(6) is appropriate only if, after drawing all reasonable infer-

bids "debt collectors" from, *inter alia:* (1) engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person," 15 U.S.C. § 1692d, (2) making a "false, deceptive, or misleading representation," 15 U.S.C. § 1692e, or (3) using "unfair or unconscionable means" to attempt to collect a debt, 15 U.S.C. § 1692f. Section 1692e specifically prohibits false representation of "the character, amount, or legal status of any debt" and the use of deceptive means "to collect or attempt to collect any debt." 15 U.S.C. § 1692e(2)(A), (10).

Defendants contest the applicability of the FDCPA, arguing that: (1) the statute of limitations has expired for all or some of the plaintiffs who allege FDCPA claims;[3] (2) they are not "debt collectors" within the meaning of the statute; and (3) their alleged actions are not prohibited by the FDCPA. I address each argument in turn.

### a) *Statute of Limitations*

Defendants argue that some or all of the FDCPA claims are time-barred.[4] To be timely, an FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiffs counter that the equitable tolling doctrine preserves their claims.

The first FDCPA violations allegedly occurred when the Leucadia and Mel Harris defendants filed the state debt collection actions. Defendants plausibly violated the FDCPA again when they subsequently applied for default judgments against plaintiffs.[5] Even using the default judgment application dates, the claims of Sykes, Graham, and Perez would be time-barred because those dates were more than a year before December 28, 2009, when the class action allegations were asserted.[6] (*See* Compl. ¶¶ 128, 203, 230).

---

ences in plaintiff's favor, the complaint fails to allege facts that give rise to a plausible claim for relief.

3. Only six of the eight plaintiffs assert FDCPA claims, as Colon and Veerabadren do not assert any. (Compl. ¶ 337 n.*). The Leucadia and Mel Harris defendants maintain, however, that all claims brought by Colon must be dismissed because she entered into a stipulation with LR Credit 12, LLC on December 10, 2009 to dismiss the underlying debt collection action in a "complete settlement of all issues related to or arising out of this matter." (Scher Decl. in Supp. of Mel Harris Defs.' Mot. to Dismiss Ex. B ¶ 4). Notwithstanding the dismissal of the claims, Colon claims damages arising from independent causes of action in this Court. Moreover, paragraph 3 of the stipulation states that the matter and any counterclaim are discontinued "without prejudice." (*Id.* Ex. B. ¶ 3). Thus, I decline to dismiss Colon's other claims.

4. The Leucadia defendants argue that all plaintiffs' claims are time-barred. The Mel Harris and Samserv defendants only argue that the FDCPA claims of Sykes, Graham, and

Perez are time-barred, and concede that the claims of Rivera, Robinson, and Roman are timely.

5. *See, e.g., Gargiulo v. Forster & Garbus Esqs.*, 651 F.Supp.2d 188, 191–92 (S.D.N.Y.2009) (applying FDCPA to statements in affidavits submitted by defendant law firm in default judgment application); *Hasbrouck v. Arrow Fin. Servs. LLC*, 09 Civ. 748(GLS), 2010 WL 1257885, at *1–3 (N.D.N.Y. Mar. 26, 2010) (same, with respect to defendant debt collector's affidavit); *Stolicker v. Muller, Muller, Richmond, Harms, Myers, and Sgroi, P.C.*, 04 Civ. 733(RHB), 2005 WL 2180481, at *4–5 (W.D.Mich. Sept. 9, 2005) (finding submission of attorney affidavit containing false representation in default judgment application violated FDCPA).

6. A class action challenging debt collection practices must assert FDCPA violations that accrued within a year of the filing of the class action complaint. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) ("[T]he rule most consistent with federal class action procedure must be that the commencement of a class action

Thus, it appears that absent equitable tolling, their claims would be untimely.

■■■■ The Complaint plausibly alleges that equitable tolling applies, as to most of the plaintiffs' FDCPA claims. A statute of limitations may be tolled in extraordinary circumstances, if a plaintiff establishes that: (1) the defendant concealed from him the existence of his cause of action; (2) he remained in ignorance of that cause of action until some length of time within the statutory period before commencement of his action; and (3) his continuing ignorance was not attributable to lack of diligence on his part. *State of N.Y. v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir.1988); *see also Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349–50, 22 L.Ed. 636 (1874). FDCPA claims are subject to equitable tolling. *Somin v. Total Cmty. Mgmt. Corp.*, 494 F.Supp.2d 153, 158 (E.D.N.Y.2007) (citing *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir.1996)).

■■■■ Sykes and Perez have sufficiently alleged that defendants fraudulently deprived them of notice of their debt collection actions.[7] Because sewer service purposefully ensures that a party is never served, it is plausible that defendants' acts were "of such character as to conceal [themselves]" to warrant equitable tolling. *Bailey*, 88 U.S. at 349–50. The present class action commenced on December 28, 2009. Because Sykes and Perez allege that they discovered the default judgments entered against them after December 28, 2008, their claims would be timely under equitable tolling. (*See* Compl. ¶¶ 137, 239). The Complaint alleges, however, that Graham did receive a copy of the summons and complaint by mail from Mel Harris, LLC sometime before a default judgment was entered against her, and thus it fails to allege exercise of due diligence on her part. (*See id.* ¶ 199). Thus, this prong of defendants' motion is granted with respect to Graham, but denied as to all other plaintiffs.

### b) *Definition of "Debt Collectors"*

Congress enacted the FDCPA to eliminate the abusive debt collection practices of "debt collectors," and the provisions plaintiffs invoke apply only to the activities of "debt collectors." 15 U.S.C. § 1692(e); *see* 15 U.S.C. §§ 1692d, 1692e, 1692f. A "debt collector" is a "person" who "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA does not apply to "creditors" or their employees, however, if they seek to collect their own debt. *See* 15 U.S.C. § 1692a(4) (defining a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed"); 15 U.S.C. § 1692a(6)(A), (6)(F)(ii) (defining "debt collector" to exclude any officer or employee of a "creditor" collecting its own debts, or any person collecting a debt

---

suspends the applicable statute of limitations as to all asserted members of the class who would have been parties [.]''); *Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 315 (D.Conn.2004) (certifying "one-year FDCPA class" reaching one year back from filing of class action).

7. The Mel Harris and Samserv defendants counter that some of plaintiffs must have received copies of the summons and complaint directly from the court clerk or Mel Harris, LLC prior to entry of the default judgments, pursuant to state rules. *See* 22 N.Y. Comp. Codes R. & Regs. § 208.6(h)(2); N.Y. C.P.L.R. § 3215. In doing so, they impermissibly ask the Court to draw an inference—that plaintiffs received notice—that is contradicted by the factual allegations of the Complaint.

"originated by such person").[8] The Leucadia defendants argue that plaintiffs have failed to sufficiently allege that they are "debt collectors." The Samserv defendants argue that they fall within the FDCPA's special process server exemption.

■ I conclude, as a matter of law, that the Leucadia defendants are "debt collectors." The Second Circuit has interpreted the FDCPA's definition of "debt collector" to include an entity that attempts to collect debts in default and does not "service" the debt, even though it nominally owns the debt and is collecting it for itself. *Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 83–85 (2d Cir.2003) (citing 15 U.S.C. § 1692a(6)(F)(iii)). First, the Complaint alleges that the Leucadia defendants are principally in the business of buying defaulted debts and seeking to collect on them, as they have filed more than 100,000 debt collection actions in state courts since 2006. Second, the Complaint alleges numerous instances in which the Leucadia defendants used interstate wires, to prepare non-military affidavits and to freeze plaintiffs' bank accounts, among other acts. Thus, they fall squarely within the first prong of section 1692a(6)'s definition of "debt collector." To the extent that the Leucadia defendants argue that they are not "debt collectors," that the FDCPA does not apply to employees or subsidiaries of a "creditor" collecting its own debts, or that their principal business is not the collection of debts, their motion to dismiss is denied.

■ The Samserv defendants argue that they are not "debt collectors" because the FDCPA expressly exempts any "person" engaged in "serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." 15 U.S.C. § 1692a(6)(D). Thus, process servers whose involvement is merely "limited to serving the [debt collection] communication on the consumer—in effect, to being messengers"—are exempt. *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 117 (2d Cir.1998) (quoting S.Rep. No. 95–382, at 3–4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1697–98). But a process server who goes "beyond being merely being a messenger ... and engages in prohibited abusive or harassing activities to force an individual to repay a debt" cannot claim the exemption's protections. *Flamm v. Sarner & Assoc. P.C.*, No. 02 Civ. 4302(LAR), 2002 WL 31618443, at *5 (E.D.Pa. Nov. 6, 2002); *see McNall v. Credit Bureau of Josephine County*, 689 F.Supp.2d 1265, 1277–78 (D.Or.2010). Because the FDCPA protects process servers only "while" they serve process, the Samserv defendants' alleged failure to serve plaintiffs process and provision of perjured affidavits of service remove them from the exemption. On these facts, their conduct would be actionable under the FDCPA. Their motion to dismiss is denied.[9]

### c) *Whether the Activities Are Prohibited*

■ The Mel Harris defendants argue that their filing of debt collection actions

---

**8.** The FDCPA applies to debt collectors and not creditors "because debt collectors, unlike creditors, are not constrained in their actions by the risk that a negative reputation regarding debt collection practices might threaten their continued access to new borrowers." *Williams v. Citibank, N.A.*, 565 F.Supp.2d 523, 528 n. 6 (S.D.N.Y.2008).

**9.** Thus, to the extent that the Mel Harris defendants argue that they cannot be vicariously liable for the Samserv defendants' actions because process servers are exempt under the FDCPA, I also deny their motion to dismiss. Plaintiffs have also sufficiently pled facts that, if proven, show that the Mel Harris and Leucadia defendants knew Samserv's affidavits of service were "highly likely to be false." (Compl. ¶¶ 98–107).

and affidavits of merit are not prohibited under the FDCPA. While the filing of a debt collection action alone does not violate the FDCPA, if the complaint was supported by affidavits that contained false or deceptive representations about the status and character of the debt, see 15 U.S.C. § 1692e(2)(A), (10), then the filing of the state action could also be deemed "unfair or unconscionable" in violation of 15 U.S.C. § 1692f. See, e.g., Kuria v. Palisades Acquisition XVI, LLC, No. 09 Civ. 3321(JOF)(RGV), 752 F.Supp.2d 1293, 1303, 2010 WL 4780769, at *7 (N.D.Ga. Nov. 16, 2010) (finding actionable FDCPA claims where debt-buyer allegedly did not intend to take claims to trial to prove their merit, but instead intended only to obtain default judgment or pursue settlement). Courts that have addressed misrepresentations regarding an affiant's knowledge in affidavits of merit in such cases have also rejected the Mel Harris defendants' position.[10]

Plaintiffs do not merely allege that the Leucadia and Mel Harris defendants "lack physical evidence of the debt," but that they knowingly authorized defendant Fabacher to file false affidavits of merit—misleading both the Civil Court and consumer-defendants—to secure default judgments that enabled them to freeze bank accounts, threaten to garnish wages, or pressure individuals into settlements. (Compl. ¶¶ 6–7, 116–18). The FDCPA claims against the Mel Harris defendants are plausible, and their motion to dismiss them is denied.

### 2. The RICO Claims

Plaintiffs assert civil RICO claims against all defendants pursuant to 18 U.S.C. § 1962(c) (substantive RICO claim) and § 1962(d) (RICO conspiracy claim). Defendants move to dismiss the RICO claims pursuant to Rules 12(b)(6) and 9(b).[11]

To state a claim for a substantive RICO violation, a plaintiff must allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir.2001) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275 (1985)). To establish standing under section 1962(c), a plain-

---

10. See, e.g., Midland Funding LLC v. Brent, 644 F.Supp.2d 961, 970 (N.D.Ohio) (holding that debt-buyers' false affidavit of merit, used in attempt to collect debt, violated FDCPA because it effectively served to validate debt to reader, whether consumer or court), modified on reconsideration Midland Funding LLC v. Brent, No. 08 Civ. 1434(DAK), 2009 WL 3086560 (N.D.Ohio Sept. 23, 2009) (narrowing order to enjoin use of form affidavits that falsely claim to be based on defendant's personal knowledge); Williams v. Javitch, Block & Rathbone, LLP, 480 F.Supp.2d 1016, 1022–24 (S.D.Ohio 2007) (finding actionable FDCPA claim against debt collector's law firm that prepared and filed debt collection suits including affidavits of creditor employee whom defendant "knew or should have known" lacked specific knowledge of the original debt).

11. Under Rule 9(b), a complaint that alleges fraud must comply with heightened pleading requirements, as it must state "with particularity" the "circumstances" of the fraud. Fed.R.Civ.P. 9(b). Where a RICO claim is predicated upon mail or wire fraud, plaintiffs must "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989). The complaint must also establish a "strong inference" of fraudulent intent, by showing that defendants had both motive and opportunity to commit fraud, or allege facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290–91 (2d Cir.2006).

tiff must show injury to "business or property," and that such injury was "by reason of" the substantive RICO violation under both factual and proximate causation. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir.) (quoting 18 U.S.C. § 1964(c)), *cert. denied,* 540 U.S. 1012, 124 S.Ct. 532, 157 L.Ed.2d 424 (2003). Defendants challenge the sufficiency of every element of plaintiffs' RICO claims and plaintiffs' standing pursuant to section 1964(c). I first address the substantive RICO claims, by considering: the underlying predicate acts (i.e., the latter two elements); the elements of enterprise and conduct; and plaintiffs' standing. I then address the RICO conspiracy claim.

### a) *Substantive RICO Claim*

#### 1. *Pattern of Racketeering Activity*

■ "Racketeering activity" is defined to include certain criminal acts, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). A complaint alleging mail and wire fraud as the predicate acts of a RICO claim must show: (1) the existence of a scheme to defraud; (2) defendant's knowing or intentional participation in the scheme; and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.[12] *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.,* 84 F.3d 629, 633 (2d Cir.1996) (citing *United States v. Gelb,* 700 F.2d 875, 879 (2d Cir.), cert. denied, 464 U.S. 853, 104 S.Ct. 167, 78 L.Ed.2d 152

(1983)). At least two acts of racketeering activity within a span of ten years are required to establish a "pattern" of racketeering activity. 18 U.S.C. § 1961(5).

■ The Complaint meets Rule 9(b)'s heightened pleading standard. As discussed *supra,* plaintiffs have presented "strong circumstantial evidence" of a scheme among defendants to defraud plaintiffs of money or property. (*See* Compl. ¶¶ 347–55). Moreover, plaintiffs have pleaded with particularity a pattern of racketeering activity, including at least twenty allegedly fraudulent statements and eighteen acts involving use of the mail and wires over three years, in furtherance of the alleged fraud. (*Id.* ¶¶ 347–55, 351(A)-(II)). The Complaint sufficiently alleges facts that give rise to "a strong inference of fraudulent intent" because defendants had a motive and opportunity to do so. The allegations sufficiently establish defendants' "conscious misbehavior or recklessness" with respect to preparing false filings with state courts.[13] The Complaint, however, does not sufficiently allege that all defendants committed the mail and wire fraud. No facts are alleged connecting Mel Harris manager David Waldman or Joseph Orlando and Philip Cannella (officers of LNC and of LR Credits 10, 12, 14, 18, and 19, LLCs) to the racketeering activity. I dismiss all substantive RICO claims against these three individual defendants, but deny the motion as to the other defendants.

**12.** The communications transmitted by mail or wire need not themselves contain false or misleading statements so long as the mail or interstate wires are in furtherance of the fraudulent scheme. *Schmuck v. United States,* 489 U.S. 705, 714–15, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989).

**13.** Any pleadings alleging fraud based upon information and belief are appropriate under Rule 9(b) where there are facts peculiarly within the opposing party's knowledge and

plaintiff provides a statement of the facts upon which the belief is based. *DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987). Despite the Leucadia defendants' claim that plaintiffs did not indicate that the information necessary to plead fraud was within their control, the Complaint clearly indicates that facts are peculiarly in the control of the remaining defendants. (*See also* Compl. ¶ 351(II)).

## 2. *Enterprise*

Plaintiffs allege that the three groups of defendants comprise three distinct groups of "persons" forming four "enterprises" within the meaning of 18 U.S.C. § 1961(4) [14]: a Leucadia RICO enterprise, a Mel Harris RICO enterprise, a Samserv RICO enterprise, and an enterprise made up of all three groups. (Compl. ¶¶ 342–44). Each group of defendants is allegedly "employed by or associated with" their respective group enterprise and the conglomerate enterprise. (*Id.* ¶¶ 342–43).

A RICO enterprise must have a "common purpose of engaging in a course of conduct," and its existence is "proven 'by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir.2004) (quoting *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). An association-in-fact must have at minimum the following structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, — U.S. —, 129 S.Ct. 2237, 2244, 173 L.Ed.2d 1265 (2009). *See also United States v. Burden*, 600 F.3d 204, 215 (2d Cir.2010) ("An association-in-fact enterprise ... need not have a hierarchical structure or a 'chain of command.'") (quoting *Boyle*, 129 S.Ct. at 2245).

The Mel Harris defendants claim that plaintiffs have not properly alleged an association-in-fact among the defendants. The Complaint sufficiently describes a collective enterprise among the defendants, formed for the common purpose of securing default judgments through fraudulent means. (*See also* Compl. ¶¶ 342–46). Specifically, the Mel Harris and Leucadia defendants allegedly formed joint ventures to purchase portfolios of defaulted debts; agreed to collect on the debts through litigation coupled with fraudulent means, including the filing of fraudulent affidavits of service from the Samserv defendants; and used the proceeds of the scheme to fund the purchase of new debts to continue the enterprise. (*Id.* ¶¶ 82, 97–98, 345–46, 355). Thus, the Complaint sufficiently alleges the purpose, relationships and longevity required of an association-in-fact.

A RICO "enterprise" must also be separate and distinct from the "person" conducting the racketeering activities of the enterprise. *DeFalco*, 244 F.3d at 307 (citing 18 U.S.C. § 1962(c)). Thus, where "employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, [they] do not form an enterprise distinct from the corporation." *Id.* (quoting *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994)). Nor can a corporate entity simultaneously be the "enterprise" and the "person" who engages in the activity prohibited under RICO. *Bennett v. U.S. Trust Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir.1985). The Second Circuit has interpreted *Bennett* to bar separate RICO liability for subsidiaries that act on behalf of and are wholly owned by a defendant parent corporation. *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1063–64 (2d Cir.1996), *vacated on other grounds sub nom. NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998).

---

**14.** The RICO statute broadly defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

■ The Leucadia defendants argue that plaintiffs have failed to show that the "persons" accused of violating RICO are distinct from the alleged "enterprise" because a parent and its subsidiaries cannot conspire with each other to form a distinct "Leucadia RICO enterprise," and thus cannot be subject to liability for conducting the affairs of that enterprise. An enterprise may exist, however, when a defendant corporate entity allegedly associates with others to form an enterprise that is sufficiently distinct from itself—i.e., where a "partial overlap" between the "person" and the "enterprise" exists. *Riverwoods*, 30 F.3d at 344. Thus, a group of corporations can form a RICO enterprise. *United States v. Huber*, 603 F.2d 387, 393–94 (2d Cir.1979). Assuming that LNC is the parent corporation of the seven Leucadia subsidiaries, these defendant entities and their employees cannot form a distinct "Leucadia RICO enterprise." In the same vein, the Mel Harris and Samserv employee defendants cannot "associate with" the corporate defendants to comprise a distinct "Mel Harris RICO enterprise" and "Samserv RICO enterprise." Thus, I grant defendants' motion to dismiss the allegations that *each* of the three sets of defendants comprises a separate RICO enterprise. I hold, however, as a matter of law that the Complaint does allege a viable RICO enterprise composed of all three sets of defendants.

### 3. *Conduct*

The substantive RICO statute makes it unlawful "for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. § 1962(c). All three groups of defendants argue that their individual defendants cannot be liable because their respective roles and leadership have not been sufficiently alleged and thus the conduct element of plaintiffs' 1962(c) claim fails.

■ The Supreme Court has construed the otherwise broad language of section 1962(c) regarding conduct to require that the defendant "participated in the operation or management" of the enterprise itself and had "some part in directing the enterprise's affairs" to be liable. *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). A lower-level participant may be liable even if he does not perform a "managerial role," but nonetheless "exercise[s] broad discretion" in carrying out a principal's instructions. *Burden*, 600 F.3d at 219 (quoting *United States v. Diaz*, 176 F.3d 52, 92 (2d Cir.1999)).

Accordingly, I dismiss the substantive RICO claims against the five individual process server defendants, Benjamin Lamb, Michael Mosquera, John Andino, Husam Al–Atrash, and Assmat Abdelrahman, as the Complaint only alleges that they were "associated" with the enterprise and fails to allege that they directed or controlled the racketeering activity in any way. The Complaint has sufficiently pleaded facts, however, that would establish the substantive RICO liability of all the other defendants (except Waldman, Orlando, and Canella).

### 4. *Standing; Injury and Causation*

The Leucadia and Samserv defendants argue that the Complaint insufficiently alleges injury to plaintiffs' property interests and that the RICO violations were not the proximate cause of their injuries. As discussed *supra*, defendants' pursuit of default judgments and attempts to enforce them against plaintiffs proximately caused their injuries, *see Baisch v. Gallina*, 346 F.3d 366, 373–74 (2d Cir.2003), which include the freezing of personal bank accounts and incurring of legal costs

to challenge those default judgments. The motions to dismiss are denied to the extent that they argue lack of standing.

### b) *RICO Conspiracy Claim*

Section 1962(d) makes it "unlawful for any person to conspire to violate" any of the substantive provisions of RICO. 18 U.S.C. § 1962(d). Thus, a RICO conspiracy is "an agreement to conduct or to participate in the conduct of a charged enterprise's affairs through a pattern of racketeering." *United States v. Pizzonia,* 577 F.3d 455, 464 (2d Cir.2009) (citing *United States v. Persico,* 832 F.2d at 705, 713 (2d Cir.1987)). Defendants claim that plaintiffs have neither pleaded a substantive RICO violation nor established an agreement among the defendants. Here, the pleadings sufficiently allege substantive RICO violations and plausibly establish an agreement among the defendants, as discussed *supra.*

In addition, while a defendant may not be liable under the "operation or management" test for substantive RICO violations, he may be liable of a RICO conspiracy where he " 'know[s] the general nature of the conspiracy and that the conspiracy extends beyond [his] individual role[ ].' " *United States v. Zichettello,* 208 F.3d 72, 99 (2d Cir.2000) (quoting *United States v. Rastelli,* 870 F.2d 822, 828 (2d Cir.1989)); *see also Salinas v. United States,* 522 U.S. 52, 64, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("A person . . . may be liable for [§ 1962(d) ] conspiracy even though he was incapable of committing the substantive offense."). For the above reasons, I deny the Samserv defendants' motions to dismiss the RICO conspiracy claims with respect to all Samserv employees, including the five individual process server defendants. Conversely, because of the insufficiency of the pleadings with respect to Waldman, Orlando, and Canella, I also dismiss all RICO conspiracy claims

against them. The Complaint has sufficiently pleaded facts, however, that would establish the liability of all other defendants for the RICO conspiracy claim, and thus this prong of their motions to dismiss is denied.

### 3. *Pendent State Claims*

Defendants challenge the GBL § 349 claim on the grounds of sufficiency (all defendants) and mootness (Leucadia), and the Judiciary Law § 487 claim on the ground of sufficiency (Mel Harris).

Under GBL § 349, a plaintiff must show that: (1) the defendant's conduct is "consumer-oriented"; (2) the defendant is engaged in a "deceptive act or practice"; (3) the plaintiff was injured by this practice; and (4) "the acts or practices have a broader impact on consumers at large." *Wilson v. Nw. Mut. Ins. Co.,* 625 F.3d 54, 64 (2d Cir.2010) (citing *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 24–27, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). Thus, even though the default judgments against plaintiffs have been vacated by the state courts or by agreement with defendants, plaintiffs' claim for damages cannot be moot. For the same reasons discussed *supra,* plaintiffs have alleged facts sufficient to survive a motion to dismiss as to all defendants except Waldman, Orlando, and Cannella. Thus, I grant the defendants' motions only as to these three individuals.

Judiciary Law § 487 provides that any attorney who has engaged in "any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party" is guilty of a misdemeanor and liable for damages. N.Y. Jud. L. § 487. Plaintiffs' allegations regarding the fraudulent affidavits and other filings provide adequate support for this claim

against the Mel Harris defendants. Thus, the Mel Harris defendants' motion to dismiss the Judiciary Law claim is denied.

## B. *Defendants' Remaining Arguments*

### 1. *The Rooker–Feldman Doctrine*

■■■■ The Leucadia and Mel Harris defendants claim that this Court lacks subject matter jurisdiction over all or some of the claims under the *Rooker–Feldman* doctrine because plaintiffs are effectively appealing from a state-court judgment. The *Rooker–Feldman* doctrine applies only if, *inter alia*, a plaintiff invites a district court to review and reject an adverse state-court judgment. *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir.2005). This argument fails, as plaintiffs assert claims independent of the state-court judgments and do not seek to overturn them. In fact, all plaintiffs have had the default judgments against them vacated or discontinued. Plaintiffs seek, inter alia, declaratory relief that defendants violated the law and injunctive relief via notice to putative class members that is independent of the state-court judgments. The motion to dismiss for lack of subject matter jurisdiction is denied.

### 2. *The Litigation Privilege and Noerr–Pennington Doctrine*

The Leucadia defendants also argue that they are entitled to absolute privilege under state law for the statements made in the course of litigation in state courts. Because plaintiffs have not claimed defamation, the privilege is wholly inapplicable here.

■■■■ Alternatively, the Leucadia defendants maintain that they are immune from liability for exercising their First Amendment right to petition based upon the *Noer–Pennington* doctrine, which "immunizes from liability a party's commence-ment of a prior court proceeding." *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir.2002). The doctrine's "sham exception," however, excludes any abuse of process that bars access to the courts, such as " 'unethical conduct in the setting of the adjudicatory process' or the pursuit of a 'pattern of baseless, repetitive claims.' " *Landmarks Holding Corp. v. Bermant*, 664 F.2d 891, 896 (2d Cir.1981) (quoting *Calif. Motor Transp. v. Trucking Unltd.*, 404 U.S. 508, 513, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)). Given the allegations of litigation-related misconduct here, I deny this prong of their motion to dismiss.

### 3. *Piercing the Corporate Veil*

The Leucadia defendants move to dismiss for failure to state a claim on the basis that plaintiffs fail to pierce two layers of corporate veils. I construe their motion to dismiss the claims to be on behalf of all Leucadia defendants except the LR Credits 10, 12, 14, 18, and 19, LLCs (the "numerical LR Credits"), since the numerical LR Credit defendants directly sued plaintiffs in state court. The Complaint makes the following factual allegations:

- LNC is the parent corporation of the other seven Leucadia corporate defendants, which are wholly-owned subsidiaries of LNC and remit all their profits directly to LNC;

- LNC has complete control over the other seven corporate Leucadia entities' debt collection activities;

- L–Credit, LLC is the sole corporate owner of LR Credit, LLC, which in turn is the sole corporate owner of all five numerical LR Credits;

- Orlando serves as vice president and CFO of LNC while also serving as president of LR Credit, LLC and all five numerical LR Credits;

• Cannella serves as LNC's assistant vice president and director of taxes while also serving as vice president of LR Credit, LLC and all five numerical LR Credits;

• all eight corporate defendants share the same Manhattan address: 315 Park Avenue South, 20th Floor.

(*Id.* ¶¶ 26–34).

Courts may pierce the corporate veil and disregard the corporate form "whenever necessary to prevent fraud or to achieve equity." *Morris v. N.Y. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 140, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993) (quoting *Walkovszky v. Carlton*, 18 N.Y.2d 414, 417, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966) (internal punctuation omitted)). The Complaint alleges a plausible claim of veil-piercing against parent LNC vis-á-vis all seven Leucadia corporate subsidiaries.[15]

Generally, the veil-piercing analysis is governed by the law of the place of incorporation. *United States v. Funds Held in the Name or for the Benefit of Wetterer*, 210 F.3d 96, 106 (2d Cir. 2000). LR Credit, LLC and L–Credit, LLC are Delaware limited liability companies, and the numerical LR Credits are New York limited liability companies. (Compl. ¶¶ 30–32). Under New York law, the veil-piercing analysis has two elements: (1) the owner "exercised complete domination over the corporation with respect to the transaction at issue;" and (2)

"such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir.1997) (citing *Morris*, 82 N.Y.2d at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157). Under Delaware law, this analysis similarly requires that: (1) "the business entity and its owner 'operated as a single economic entity'" and (2) "an 'overall element of injustice or unfairness.'" *NetJets Aviation, Inc. v. LHC Communications, LLC*, 537 F.3d 168, 173–74 (2d Cir.2008) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir.1995)). Because the second prongs of both tests are easily met based upon the fraud and misconduct allegations *supra*, I turn to the factors-based tests for the first prongs.

Courts within this Circuit have found both tests to be substantially similar.[16] Under New York law, the Leucadia defendants' business model as alleged meets the "complete control" requirement given the "overlap in ownership, officers, directors, and personnel," "common office space" among the corporate entities, and low "amount of business discretion displayed by the allegedly dominated corporation[s]." *See Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir.1991). Similarly, under Delaware law I conclude that plaintiffs plausibly allege that the Leucadia subsidiaries "operated as an alter ego of another"—LNC—and that "in general, the corporation simply functioned as a facade

---

**15.** The law in this jurisdiction is unclear as to whether a plaintiff is required to pierce the veil of each layer of alleged corporate control. *See In re BH S & B Holdings LLC*, 420 B.R. 112, 135 (Bankr.S.D.N.Y.2009) (noting the lack of clarity and declining to reach the issue). Deciding that issue is not necessary here, as 1 find a plausible claim of veil-piercing against LNC with respect to the seven other corporate entities.

**16.** *See, e.g., EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F.Supp.2d 265, 273 n. 3 (S.D.N.Y.2004) (noting substantial similarity between New York and Delaware approaches to piercing the corporate veil); *Wausau Bus. Ins. Co. v. Turner Const. Co.*, 141 F.Supp.2d 412, 417 (S.D.N.Y.2001) (same); *S.J. Berwin & Co. v. Evergreen Entm't Group, Inc.*, No. 92 Civ. 6209(WK), 1995 WL 606094, at *2 (S.D.N.Y. Oct. 12, 1995) (same).

for the dominant shareholder." *Maloney–Refaie v. Bridge at School, Inc.*, 958 A.2d 871, 881 (Del.Ch.2008) (quoting *Harco Nat'l Ins. Co. v. Green Farms, Inc.*, Civ. A. No. 1331(MAH), 1989 WL 110537, at *4 (Del.Ch. Sept. 19, 1989)); *see also Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del.Ch.1992); accord *Fletcher*, 68 F.3d at 1457 (citing cases). Thus, I deny the Leucadia defendants' motion to dismiss on this basis.

### CONCLUSION

For the foregoing reasons, defendants' motions are granted in part and denied in part. The following claims are dismissed: the FDCPA claims asserted by Graham as against all defendants; the claims alleging a distinct "Leucadia RICO enterprise," a distinct "Mel Harris RICO enterprise," and a distinct "Samserv RICO enterprise"; the substantive RICO claims against David Waldman, Joseph Orlando, Philip Canella, Benjamin Lamb, Michael Mosquera, John Andino, Husam Al–Atrash, and Assmat Abdelrahman; and the RICO conspiracy and GBL § 349 claims against Waldman, Orlando, and Canella. Plaintiffs may proceed with their remaining claims. The stay on depositions is hereby lifted. The parties shall appear for a status conference on January 11, 2011 at 11:00 a.m.

SO ORDERED.