**Delia POLANCO, Plaintiff,**

v.

**NCO PORTFOLIO MANAGEMENT, INC., Defendant.**

**No. 11–CV–7177 (DAB).**

United States District Court, S.D. New York.

Signed Sept. 23, 2015.

---

Ahmad Keshavarz, Ahmad Keshavarz, Law Offices, Brooklyn, NY, for Plaintiff.

Aaron R. Easley, Sessions, Fishman, & Nathan & Israel LLC, Flemington, NJ, for Defendant.

### *MEMORANDUM AND ORDER*

DEBORAH A. BATTS, District Judge:

Plaintiff Delia Polanco ("Plaintiff" or "Polanco") brings this action against De-

fendant NCO Portfolio Management, Inc. ("Defendant NCOP" or "NCOP"). Now before the Court are the Parties' Cross Motions for Summary Judgment.

Plaintiff's Partial Motion for Summary Judgment ("Plaintiff's Motion") seeks summary judgment as to liability, arguing that based on prior decisions in the case, she states claims for FDCPA violations and conversion, and now has put forth facts on the record supporting those claims. Underlying that general argument, Plaintiff seeks summary judgment that: (1) NCOP is a "debt collector" under the FDCPA; and (2) NCOP is directly liable as a party to the collections lawsuit, and vicariously liable for actions taken by MSH in the collections lawsuit.[1]

Defendant NCOP seeks summary judgment on three corresponding grounds:[2] (1) NCOP is not a "debt collector" and therefore not liable under the FDCPA; (2) as principal, NCOP cannot be subjected to a greater degree of liability than its agent, MSH, which has already settled with Plaintiff; and (3) NCOP is not liable for conversion because it was not directly involved in collecting Plaintiff's debt and never had possession of Plaintiff's property.

For the reasons stated below, Plaintiff's Partial Motion for Summary Judgment is GRANTED in part and DENIED in part. Defendant NCOP's Motion for Summary Judgment is DENIED.

## I. BACKGROUND

### a. Factual Background

Except where otherwise noted, the following facts are undisputed.

Plaintiff Polanco had a debt arising out of a retail charge account. (Plaintiff's Local Rule 56.1 Statement of Material Facts for Summary Judgment ("Pl.'s 56.1 Stmt.") ¶¶ 1–2; Defendant NCO Portfolio Management, Inc.'s Response to Plaintiff's Statement of Material Facts, ("Def.'s Resp. 56.1 Stmt.") ¶ 2.) Defendant NCOP purchased Plaintiff's defaulted debt and placed it with NCO Financial Systems, Inc. ("NCOF") for debt collection on December 13, 2004. (Defendant's Local Rule 56.1 Statement of Material Facts ("Def.'s 56.1 Stmt.") ¶ 1; Plaintiff's Local Rule 56.1 Counter Statement of Material Facts in Response to Defendant NCO Portfolio Management, Inc.'s Motion for Summary Judgment ("Pl.'s Resp. 56.1 Stmt.") ¶ 1.)

The Parties dispute the relationship between NCOP and NCOF.[3] Plaintiff cites the testimony of Defendant's deponent, Michael G. Noah, Senior Vice President of NCOF, who agreed with Plaintiff's Counsel's characterization that for this case, "[NCOP] and [NCOF] are essentially the same entity for the purposes of attempting to collect a debt as to [Plaintiff]." (Transcript of Michael G. Noah Deposition ("Noah Tr.") 11:22–12:21, Declaration of Ahmad Keshavarz in Support of Plaintiff's

---

**1.** Given that Plaintiff asserts that NCOP and NCOF are not separate entities, *see infra* at 570–71, the Court construes Plaintiff's Motion as not arguing that NCOP is vicariously liable for NCOF's actions.

**2.** Defendant also moved for summary judgment on that ground that Plaintiff withdrew her claim for actual damages in her Amended Complaint, rendering her FDCPA claim moot based on Federal Rule of Civil Procedure 68. As noted below, this argument was rejected

by the Court in its Order dated January 26, 2015. (ECF No. 75.)

**3.** Plaintiff used the acronym "NCO" in her Complaint to refer to Defendant NCOP, and did not name NCOF as a defendant or mention it at all in her Complaint. For clarity, when the facts do not identify either NCOP or NCOF specifically, or where there is a dispute among the Parties as to which entity is being referenced, the Court will use the terms "NCO" or "NCO entity."

Motion ("Keshavarz Decl."), Ex. D; Pl.'s Resp. 56.1 Stmt. ¶¶ 1, 4, 11–19, C.2.)[4] On the other hand, Defendant avers that "Plaintiff has continuously ignored the corporate formalities maintained by NCO Portfolio Management, Inc. and its sister company, NCO Financial Systems, Inc." (Def.'s Resp. 56.1 Stmt. ¶¶ 6, 8–12, 14.)[5] In addition, with respect to NCOF, Mr. Noah testified "It's one of the—that's the main collection agency of NCO, it's really—it has several subsidiaries under it, but it's the main collection arm. The accounts receivable collection." (Noah Tr. 12:8–12.) When asked if there was any difference between NCOP and NCOF, NCOF's former Legal Compliance Manager Scott Dworsak testified, "I think—I—I believe they were both the same overhead, but they were kind of different entities beneath." (Transcript of Scott Dworsak Deposition ("Dworsak Tr.") 12:4–17, Keshavarz Decl., Ex. I.)

It is undisputed that Defendant NCOP purchases defaulted debts and places them for collection with other agencies. (Pl.'s 56.1 Stmt. ¶ 4, 5; Answer to Am. Compl. ¶ 6.) Mr. Noah testified that NCOP "purchased charged off accounts, hundreds of thousands, millions of accounts" and "placed those accounts for collections to various entities." (Pl.'s 56.1 Stmt. ¶ 5 (cit-

ing Noah Tr. 13:22–14:1); Def.'s Resp. 56.1 Stmt. ¶ 5.) Plaintiff avers that NCOP has 34,000 employees, approximately 9,000 of which are debt collectors, operates in fifteen countries, has millions of accounts on which it collects debts, and has filed over 35,000 lawsuits in New York courts alone. (Pl.'s 56.1 Stmt. ¶¶ 7–11, 15.) Plaintiff also states that NCOP uses the services of 165 law firms nationally to collect debts "either directly or indirectly," and gives those law firms "operating procedures they have to follow." (Pl.'s 56.1 Stmt. ¶ 11–12; *see also* Noah Tr. 129:10–17, 172:22–173:6.) Defendant disputes the scale and nature of NCOP's business, including the number of employees it has, accounts it has purchased, and whether it uses a network of collections law firms, stating that the Noah testimony on which Plaintiff relies to establish those facts actually refers to NCOF, rather than NCOP. (Def.'s Resp. 56.1 Stmt. ¶¶ 6–11; Def.'s 56.1 Stmt. ¶ 3)[6] To support this contention, Defendant cites the testimony of NCOF's Scott Dworsak, arguing that Mr. Dworsak "testified that NCO Financial Systems, Inc., as opposed to the separate entity NCO Portfolio Management, Inc., had 'millions' of accounts." (Def.'s Resp. 56.1 Stmt. ¶ 6 (citing Dworsak Tr. 5:17, 13:20, 106:7–12).)[7]

---

**4.** The Court also notes that Defendant produced Mr. Noah to testify on behalf of both NCOP and NCOF. (Noah Tr. 11:14–12:3.)

**5.** Defendant further stated, "To be clear, NCO Portfolio Management, Inc. is in the business of purchasing accounts and placing accounts with third party debt collectors. NCO Portfolio Management, Inc. takes no steps to collect debts on its own behalf. NCO Financial Systems is a debt collector that is engaged in collecting debts." (Def.'s Resp. 56.1 Stmt. ¶ 6.)

**6.** Defendant also objects to Plaintiff's Exhibit M, submitted to demonstrate the number of lawsuits that have been filed in NCO's name, on the basis that the declaration is not com-

pliant with 28 U.S.C. § 1746, is not signed, and that the attachment lists the index numbers for only eleven cases. (Def.'s Resp. 56.1 Stmt. ¶ 15.) Although the Exhibit does not specify whether the 35,000 lawsuits were filed by NCOP, NCOF, or another NCO entity, the Court notes that the eleven suits identified in the Exhibit were filed by NCOP as Plaintiff.

**7.** The Court notes that Defendant's original Motion for Summary Judgment, and accompanying Rule 56.1 Statement, replaced the generic term "NCO" with "NCO Financial Services, Inc." when quoting the deposition testimony of Mr. Noah. Plaintiff's Counsel brought the error to Defense Counsel's attention, and Defense Counsel filed a Notice of

The Parties also dispute whether NCOP had any direct contact with Plaintiff. (Def.'s 56.1 Stmt. ¶ 21; Pl.'s Resp. 56.1 ¶ 21.)

On November 9, 2005, NCOF placed Plaintiff's account with a debt collection law firm, Mel S. Harris and Associates, LLC ("MSH"). (Def.'s 56.1 Stmt. ¶ 2; Pl.'s Resp. 56.1 ¶ 2.) On March 20, 2006, NCOP, through its lawyers MSH, obtained a default judgment against Plaintiff in the amount of $2,451.45 ("the default judgment") in a collections lawsuit in Bronx County Civil Court ("the collections lawsuit"). (Def.'s 56.1 Stmt. ¶ 4; Pl.'s Resp. 56.1 ¶ 4; Pl.'s 56.1 Stmt. ¶ 17; Def.'s Resp. 56.1 Stmt. ¶ 17.) Although it is disputed which NCO entity retained MSH to bring the collections lawsuit, the record demonstrates that NCOP was named as plaintiff in that suit and is listed in all court filings as such. (*See, generally,* Keshavarz Decl., Ex. B.)[8]

On May 30, 2006, New York City Marshal Martin A. Bienstock issued a Notice of Garnishment to Plaintiff seeking to collect on the default judgment. (Keshavarz Decl., Ex. E.) The record indicates that Bienstock collected the majority of the default judgment. (Keshavarz Decl., Ex. E, F.) Mr. Noah testified that Ms. Polanco paid MSH, which kept its commission and forwarded the remainder to NCO. (Noah Tr. 65:17–67:6.)

On October 27, 2010, Plaintiff filed a pro se Order to Show Cause to vacate the default judgment in the Bronx County Civil Court. (Pl.'s 56.1 Stmt. ¶ 26; Def.'s Resp. 56.1 Stmt. ¶ 26; Keshavarz Decl., Ex. B, 21–26) In her Affidavit in support of the Order to Show Cause, Plaintiff claimed, among other defenses, that the default judgment was obtained using a false Affidavit of Service and that she was never served with the complaint in the collections lawsuit. (Pl.'s 56.1 Stmt. ¶¶ 16–21; Keshavarz Decl., Ex. B, 22–24.)[9] In another Affidavit by Plaintiff made in this matter, Plaintiff again states that she was never served and that the process server served a "phantom neighbor" whom Plaintiff did not know. (Keshavarz Decl., Ex. A. ¶¶ 3–5.) Defendant disputes that Plaintiff was not served and that the Affidavit of Service was false. (Def.'s Resp. 56.1 Stmt. ¶¶ 17–21.) Defendant also states "[t]o the extent service of the Bronx Civil Court summons on plaintiff was improper or the result of 'sewer service,' there is no evidence that NCOP was involved with, participated in or was even aware of the method of service MSH used." (Def.'s 56.1 Stmt. ¶ 22.)

Bronx County Civil Court Judge Raul Cruz set proceedings in the matter for

Errata Sheet correcting the error. (Plf.'s Resp. 56.1 Stmt., Ex. A; ECF No. 74.) The Court notes that Defense Counsel also took liberties in characterizing the Dworsak testimony in its statement that Dworsak "testified that NCO Financial Systems, Inc., as opposed to the separate entity NCO Portfolio Management, Inc., had 'millions of accounts.'" (Def.'s Resp. 56.1 Stmt. ¶ 6.) In fact, the Dworsak testimony is ambiguous as to which NCO entity the deponent refers. The Court takes this opportunity to admonish Defense Counsel for the misleading characterization of the evidence.

8. Other record evidence suggests that MSH may have considered NCOP its client, including a Debtor History Report identified as MSH's notes, which list NCOP under "client name." (*See, e.g.,* Keshavarz Decl., Ex. F; Noah Tr. 70:24–71:2.) However, this remains a disputed issue of fact.

9. This practice is commonly known as "sewer service," whereby entities "fraudulently obtain default judgments" by "failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service." *Sykes v. Mel Harris & Associates, LLC,* 757 F.Supp.2d 413, 417 (S.D.N.Y.2010).

November 18, 2010. (Pl.'s 56.1 Stmt. ¶ 27; Keshavarz Decl., Ex. B, 21) On November 18, 2010, Judge Cruz issued a Decision/Order stating:

> This motion to vacate the default judgment entered herein against [Polanco] is granted. [Polanco] has shown excusable default and a meritorious defense to this action. Accordingly, the judgment is vacated, and all liens, restraining orders or executions placed upon [Polanco]'s property including bank accounts and wages are hereby vacated.

(Keshavarz Decl., Ex. B, 18.) ("November 2010 Order").

The Parties dispute whether Defendant NCOP was aware of the November 2010 Order. (Pl.'s 56.1 Stmt. ¶¶ 28–33; Def.'s Resp. 56.1 Stmt. ¶ 28–33.)[10] The record raises questions of fact regarding the method by which MSH and NCO (whether NCOP or NCOF) communicated about the November 2010 Order, whether MSH followed standard procedures for doing so, and ultimately whether NCO had knowledge of the Order. (Def.'s Resp. 56.1 Stmt. ¶ 36.)[11] Mr. Noah testified that NCO received the November 2010 Order on or around November 16, 2010. (Noah Tr. 125:20–23.)[12]

Defendant asserts that on January 13, 2011, NCOF terminated MSH, and on January 27, 2011, placed Plaintiff's account with Sharinn & Lipshie ("S & L"), another debt collections law firm. (Def.'s 56.1 Stmt. ¶ 7 (citing Noah Tr. 60:8–15).) Plaintiff disputes that her account was placed with S & L, citing testimony from a senior attorney at S & L, Amanda Moreno, that S & L was not the attorney of record in the case in January 2011. (Pl.'s Resp. 56.1 Stmt. ¶ 7, C.4 (citing Transcript of Amanda Moreno Deposition ("Moreno Tr.") 39:21–40:17, Pl.'s Resp. 56.1 Stmt., Ex. B).)

10. Plaintiff claims that MSH notified Defendant's "in house counsel and legal department" about the November 2010 Order. (Pl.'s 56.1 Stmt. ¶ 36.) There is a dispute of fact as to whether Defendant NCOP had an "in-house counsel and legal department," as Plaintiff alleges, or a "legal compliance department," as Defendant claims. (*Id.*; Def.'s Resp. 56.1 Stmt. ¶ 36.) However, as to the question of whether NCOP had notice of the November 2010 Order, the Court does not find distinction to be material.

11. Plaintiff contends that MSH provided NCOP with contemporaneous updates regarding her case, which Defendant disputes. (Pl.'s 56.1 Stmt. ¶ 30; Def.'s Resp. 56.1 Stmt. ¶ 30.) Mr. Noah testified that there is a Collection Resource System ("CRS"), which both NCO and MSH had access to, through which MSH and NCO could keep and share notes and documents, and notify each other of particular events in a case based on a set of notification codes. (See Noah Tr. 68:5–73:16, 117:5–120:10, 129:10–22.) However, Mr. Noah testified that MSH did not enter the appropriate code to notify NCO of the vacated default judgment in Polanco's case. (Noah Tr. 122:13–123:18.) Michael Young, a corporate representative for MSH, testified that the pleadings in the Polanco matter were emailed to NCO. (Transcript of Michael Young Deposition ("Young Tr.") at 25:6–26:5, Keshavarz Decl., Ex. H.)

12. Exhibits F and G to the Keshavarz Decl. were identified as MSH's and NCO's collection notes, respectively. (Noah Tr. 51:15–53:21.) MSH's notes from November 22, 2010 appear to indicate that Plaintiff's Motion to Vacate was granted. (Keshavarz Decl., Ex. F, 7.) NCO's notes from November 16, 2010 appear to indicate that the Plaintiff's Motion was to be heard on November 18, 2010, and that an "email [was] sent to legal review." (Keshavarz Decl., Ex. G, 14; Noah Tr. 121:23–122:19.) Finally, NCO's notes from November 26, 2010 appear to indicate that the case was decided on the merits and the judgment vacated. (*Id.* at 15.) However, because these notes appear in abbreviated form using internal codes, the Court finds only that this evidence raises a question of fact as to whether NCO had knowledge of the November 2010 Order. A jury must ultimately interpret them and weigh their credibility.

Plaintiff's funds were not returned following the November 2010 Order. On March 2, 2011, Polanco filed a second motion in the Bronx County Civil Court to "vacate, dismissal and restore case to the trial calendar" and seeking the return of $1675.00 to her. (Keshavarz Decl., Ex. B, 16–17.) On March 17, 2011, Judge Ben B. Barbato granted Plaintiff's motion and ordered:

> Any liens, levies, restraints or executions previously or currently issued by [NCOP] against any property or bank accounts of [Polanco] are vacated and any funds previously or currently, including fees, in the possession of [NCOP], city Marshall (sic) or any other agent shall be returned to [Polanco] forthwith. [NCOP]'s, City Marshall's (sic) or any other of [NCOP]'s agents' failure to comply with this order shall subject said party to a finding of contempt of this Court.

(Keshavarz Decl., Ex. B, 20) ("March 2011 Order").

Plaintiff contends that an attorney from MSH was at the March 17, 2011 hearing. (Pl.'s 56.1 Stmt. ¶ 42.) [13] Plaintiff also avers that she sent a copy of the March 2011 Order to Defendant by sending it to MSH, which she alleges was accepted by an MSH representative on April 7, 2011, as indicated by a Certified Mail Return Receipt Slip. (Id. at ¶ 43; Keshavarz Decl., Ex. L.) [14] Defendant counters that NCOP has no record of ever receiving a copy of the March 2011 Order from Plaintiff. (Def.'s Resp. 56.1 Stmt. ¶ 43.) On April 5, 2011, MSH forwarded a copy of the March 2011 Order to NCO. (Def.'s 56.1 Stmt. ¶ 11; Pl.'s Resp. 56.1 Stmt. ¶ 11.) [15]

The Parties agree that an NCO entity had possession of the March 2011 Order on April 14, 2011. [16] The Parties also agree that the NCO entity forwarded the Order to S & L on April 15, 2011, though Plaintiff contests that S & L represented NCO with respect to Plaintiff's account. (Def.'s 56.1 Stmt. ¶ 12; Pl.'s Resp. 56.1 Stmt. ¶ 12; see also Moreno Tr. 89:15–25.) Mr. Noah testified that MSH did not notify NCO correctly that the judgment was vacated, and that S & L was slow to review Plaintiff's account and inform NCO about how to proceed. (Noah Tr. 18:19–19:22, 42:10–21, 45:2–14.) Ms. Moreno testified that S & L was not attorney of record in April 2011, that NCO did not ask S & L for legal advice at that time, and that it was MSH's

---

13. Plaintiff's support for this contention is her own Affidavit. (Keshavarz Decl., Ex. A, ¶ 8.) Defendant neither admits nor denies Plaintiff's statement. (Def.'s Resp. 56.1 Stmt. ¶ 42.) The Court notes that MSH's notes do not contain an entry for that day. (Keshavarz Decl., Ex. F, 8.) An entry dated March 10, 2011 says "we no longer represent NCO. Do not appear." (Id.) The Court finds that there is an issue of fact as to whether MSH attended the hearing.

14. The Court notes that Exhibit L appear to be Certified Mail Return Receipt Slips signed on various dates, including April 7, 2011, but the Court is unable to discern which documents were sent in those mailings.

15. Plaintiff disputes Defendant's statement that the Order was forwarded to NCOF, instead maintaining that NCOF and NCOP were "essentially the same entity." (Pl.'s Resp. 56.1 Stmt. ¶ 11.)

16. Plaintiff avers that "NCO's in-house counsel and in-house legal department" had possession of the March 2011 Order. (Pl.'s 56.1 Stmt. ¶ 44.) While Defendant admits that NCOF had the Order, it counters that it was its legal compliance department, rather than in-house counsel, that had the document. (Def.'s Resp. 56.1 Stmt. ¶ 44.) Again, the Court views the dispute as to whether NCO had in-house counsel or a legal compliance department as immaterial. As to whether the dispute about whether NCOP and NCOF are distinct is material, the Court discusses this in more detail below.

responsibility, not S & L's, to inform NCO how to comply with the Order because MSH was counsel of record. (Moreno Tr. 94:2–95:13, 102:1–103:4, 105:5–106:3.)

On July 6, 2011, an NCO entity received a letter sent by Plaintiff to three credit agencies requesting that the default judgment be removed from her credit report. (Def.'s 56.1 Stmt. ¶ 14 (citing Declaration of Aaron Easley in Support of Defendant's Motion ("Easley Decl."), Ex. I); Pl.'s Resp. 56.1 Stmt. ¶ 14.) [17] An NCOF Senior Resolutions Administrator circulated the letter to NCOF's then-Legal Compliance Manager Scott Dworsak and the Director of NCPM Support Services via email. (Def.'s 56.1 Stmt. ¶ 16 (citing Easley Decl., Ex. J); Pl.'s Resp. 56.1 Stmt. ¶ 16.) [18] Between July 18, 2011 and August 2, 2011, Mr. Dworsak communicated with S & L attorney Amanda Moreno regarding the status of Plaintiff's case. (Easley Decl., Ex. K; Moreno Tr. 95:14–97:23.) On August 2, 2011, Ms. Moreno emailed Mr. Dworsak stating:

> The action was dismissed—end of story. The judge's order states that ALL funds be returned to the defendant—the order does not differentiate between voluntary and involuntary funds. The only way this case sees the inside of a courtroom again is if you do not return the funds pursuant to the judge's order. If I were you, I would return the all (sic) funds, close the file, and call it a day.

(*Id.* at 3)(emphasis in original.) Ms. Moreno testified that S & L never provided legal advice to NCO because they were never attorney of record for NCO with respect to Plaintiff's account. (Moreno Tr. 116:16–118:25, 127:23–130:20.)

On August 4, 2011, Mr. Dworsak indicated that he was "submitting to compliance for refund." (Easley Decl., Ex. K, 2.) On August 26, 2011, NCOF issued a check to Plaintiff Polanco for $1,891.25. (Def.'s 56.1 Stmt. ¶ 18; Easley Decl., Ex. L.)

Mr. Noah testified that NCO did not return the funds prior to August 25 because it was waiting for instruction from counsel. (Noah Tr. 174:17–176:24.) Mr. Noah testified that "[g]iven the circumstances, I think it was reasonable" to wait from July 6 to August 25 to return the funds, and that be believes NCO returned the funds "forthwith." (*Id.*)

### b. Procedural History

On October 12, 2011, Plaintiff filed her Complaint against Defendant NCOP and Mel S. Harris and Associates, LLC for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") arising out of the collection of her credit card debt. (ECF No. 1.) Plaintiff reached a settlement with MSH and voluntarily dismissed the action against MSH pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure on March 23, 2012. (ECF No. 13.)

On May 16, 2012, Defendant NCOP made a Motion for Judgment on the Pleadings, arguing that the FDCPA did not apply to Plaintiff's claim because it did not concern a "debt" as defined by the FDCPA since it arose out of a court order. (ECF No. 16.) On March 18, 2013, this Court rejected Defendant NCOP's argument, noting that "here, the 'character of

---

17. Defendant claims NCOF received the letter, while Plaintiff again asserts that there was no distinction between NCOP and NCOF. (Def.'s 56.1 Stmt. ¶ 14; Pl.'s Resp. 56.1 Stmt. ¶ 14.) The Court notes that in the letter, Polanco identified NCOP as the plaintiff in the case against her, and that she copied NCOP on the letter. (Easley Decl., Ex. I.)

18. Again, Plaintiff contests that NCO did not have "in-house counsel," which the Court finds to be immaterial. (Pl.'s Resp. 56.1 Stmt. ¶ 16.)

the obligation' is a consumer transaction and its debt collection," and that court orders "can be the manifestation of consumer debt" covered by the FDCPA. (ECF No. 21, at 9)(internal citation omitted.) Accordingly, the Court denied Defendant's Motion, holding that "Defendant's alleged actions of fraudulently using the court's power to secure a default judgment and subsequent garnishment and then refusing to obey promptly that same Court's Orders falls within the FDCPA's broad purpose to protect consumers from such alleged abusive and unfair tactics." (*Id.* at 10.) The Court also noted that although Defendant NCOP's Motion did "not address whether Plaintiff's claim that NCO and .Harris fraudulently obtained a default judgment, which resulted in garnishing Polanco's funds, falls under the FCDPA .... [s]uch sewer service practice, followed by obtaining a default judgment, falls squarely within prohibited acts under the FDCPA." (*Id.* at 6–7)(citing *Sykes v. Mel Harris & Assocs., LLC,* 757 F.Supp.2d 413, 421–23 (S.D.N.Y.2010).)

On July 1, 2013, by letter to the Court, Defendant indicated its intention to move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendant represented that it had made an Offer of Judgment in the amount of $2,000, double the available statutory damages, which Plaintiff rejected. Defendant claimed that because it had offered to satisfy the entire demand, pursuant to Federal Rule of Civil Procedure 68, there was no further dispute to be litigated and thus the Court had no subject matter jurisdiction. The Court found that Defendant had no good faith basis for the motion because Plaintiff's asserted damages exceeded the Offer of Judgment of Settlement. In so ruling, the Court relied on relevant case law holding that for an offer of judgment to moot a case or controversy, the offer of "must give the plaintiff *everything* he has asked

for," that is, "his entire demand." *Hrivnak v. NCO Portfolio Mgmt., Inc.,* 719 F.3d 564, 567 (6th Cir.2013) (emphasis in original); *see also Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.,* 242 F.Supp.2d 273, 277–78 (S.D.N.Y.2002) (where complaint can be read to include a request for actual damages, offer of judgment for statutory damages is not the "complete relief available" and case is not moot). Thus, the Court warned that should Defendant make the motion, Defendant could face potential sanctions pursuant to Rule 11 and that the Court would consider a motion for costs incurred by Plaintiff in defending the motion. (ECF No. 26.) Defendant did not make a motion to dismiss.

On September 23, 2013, Plaintiff made a Motion to Amend/Correct the Complaint ("Motion to Amend") to add claims for conversion and under New York Judiciary Law 487. (ECF No. 31.) Defendant opposed, arguing that both amendments would be futile. (ECF No. 33.) On June 3, 2014, Magistrate Judge Debra Freeman granted Plaintiff's Motion to Amend to add a claim for conversion, and denied Plaintiff's request to add a claim pursuant to Judiciary Law 487. (ECF No. 52.) In opposing the Motion to Amend, Defendant NCOP argued that Plaintiff could not make out a claim for conversion because Plaintiff could not make out the element of "refusal," i.e., that Defendant had refused to return Plaintiff's property upon her demand. (*Id.* at 11–12.) In so arguing, Defendant sought to rely on the deposition testimony of Mr. Noah that Defendant was waiting to hear from its new counsel, S & L, as to whether it should return the funds, and that it did so as soon as it was instructed by counsel. (*Id.* at 12.) Judge Freeman rejected this argument, stating:

Even if the deposition transcript of Defendant's witness should be deemed

integral to the proposed Amended Complaint, the witness's explanation of Defendant's conduct would not undermine the sufficiency of Plaintiff's proposed pleading. Plaintiff's proposed conversion claim rests on the allegation that Defendant had knowledge of the court's order requiring the return of Plaintiff's funds "forthwith," and it is at least plausible that Defendant's professed reason for its delay in complying with that order, even if taken as true, would not legally excuse its retention of the funds for a period of months.

(*Id.*) Judge Freeman also found that the deposition transcript was not integral to the Amended Complaint and declined to consider it on the Motion to Amend. (*Id.* at 12–15.)

In December 2014, the Parties filed their Motions for Summary Judgment. (ECF Nos. 63, 66.) In January 2015, Plaintiff moved to amend the Amended Complaint to correct a typographical error, namely, that she had removed, in error, her prayer for actual damages on the FDCPA claim. (ECF No. 73.) On January 26, 2015, this Court held that the Amended Complaint contained sufficient allegations regarding actual damages without further amendment. (ECF No. 75.) In so holding, the Court rejected Defendant's argument, made in its Motion for Summary Judgment and reminiscent of the argument made in its Motion for Judgment on the Pleadings, that, in conjunction with its prior Offer of Judgment, the absence of actual damages in the prayer for relief divested the Court of subject matter jurisdiction. (*Id.* at 3.)

## II. DISCUSSION

### a. Legal Standard for Motion for Summary Judgment

A district court should grant summary judgment when there is "no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see also Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir.2005). Genuine issues of material fact cannot be created by mere conclusory allegations. *Victor v. Milicevic*, 361 Fed.Appx. 212, 214 (2d Cir.2010). Summary judgment is appropriate only when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party. *Melendez v. Mitchell*, 394 Fed. Appx. 739, 740 (2d Cir.2010). There is a "genuine issue of fact" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In assessing when summary judgment should be granted, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Melendez*, 394 Fed.Appx. at 740 (citing *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005)). The non-movant may not rely upon speculation and/or conjecture to overcome a motion for summary judgment. *Burgess v. Fairport Cent. Sch. Dist.*, 371 Fed.Appx. 140, 141 (2d Cir. 2010). Instead, when the moving party has documented particular facts in the record, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir.2010) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Establishing such evidence requires going beyond the allegations of the pleadings, as the moment has arrived "to put up or shut up." *Weinstock v. Columbia Univ.*, 224

F.3d 33, 41 (2d Cir.2000). Thus, unsupported allegations in the pleadings cannot create a material issue of fact. *Id.*

A court faced with cross motions for summary judgment need not "grant judgment as a matter of law for one side or the other," but " 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.' " *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir.1993) (*quoting Schwabenbauer v. Bd. of Educ. of Olean,* 667 F.2d 305, 313–14 (2d Cir.1981)).

b. Fair Debt Collection Practices Act

i. Whether Defendant NCOP is a "Debt Collector"

Defendant NCOP argues, for the first time in this litigation, that it is not a "debt collector" under the FDCPA because it purchases debts but does not have any interaction with customers nor undertake any collection activities, instead relying on third party debt collectors like NCOF and MSH. (Def.'s Mot. 13–14.) As noted above, the Court has previously held that the debts at issue here are covered by the FDCPA, and that the actions allegedly taken by Defendant are the type of fraudulent and harassing behavior that the FDCPA was created to prevent. For the reasons stated below, the Court finds as a matter of law that Defendant NCOP is a "debt collector" under the FDCPA and that Plaintiff states an FDCPA claim against Defendant.

■ Congress enacted the FDCPA after finding "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Accordingly, the purpose of the FDCPA is " 'to protect consumers from deceptive or harassing actions taken by debt collectors[,]' ... with

the purpose of 'limiting the suffering and anguish often inflicted by independent debt collectors.' " *Gabriele v. Am. Home Mortg. Serv., Inc.,* 503 Fed.Appx. 89, 93 (2d Cir.2012) (internal citations omitted). "To further these ends, the FDCPA 'establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection.' " *Vincent v. The Money Store,* 736 F.3d 88, 96 (2d Cir.2013) (citing *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir.2001)). The FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 91 (2d Cir.2008). "In evaluating potential violations of the FDCPA, the court must use an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 236 (2d Cir. 1998).

■ To establish a violation under the Act,

> (1) the plaintiff must be a "consumer" who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a "debt collector," and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.

*Plummer v. Atl. Credit & Fin., Inc.,* 66 F.Supp.3d 484, 488 (S.D.N.Y.2014) (internal citation omitted).

Under the FDCPA, "debt collector" is defined, in relevant part, as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another.... [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6).

Except as described above, the definition of "debt collector" excludes "creditors," who are defined as

any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

15 U.S.C. § 1692a(4); 15 U.S.C. § 1692a(6)(A).

The FDCPA also does not apply to:

any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.

15 U.S.C. § 1692a(6)(B).

The Second Circuit has explained that the "[t]he FDCPA establishes two alternative predicates for 'debt collector' status— engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir.2004) (citing 15 U.S.C. § 1692a(6)). Further, it held that "the question of whether [an entity] 'regularly' engages in debt collection activity within the meaning of section 1692a(6) of the FDCPA must be assessed on a case-by-case basis in light of factors bearing on the issue of regularity," including,

(1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, *63 (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the [entity] to assist in the collection of outstanding consumer debt obligations. Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity.

*Id.* at 62–63.

Additionally, an entity that shares "common ownership or [is] affiliated by corporate control" may engage in debt collection services, the company on whose behalf that entity collects is not necessarily a "debt collector" by virtue of that relationship if its principal business is not debt collection. 15 U.S.C. § 1692a(6)(B); *see LaCourte v. JP Morgan Chase & Co.*, No. 12 Civ. 9453, 2013 WL 4830935, at *3–5 (S.D.N.Y. Sept. 4, 2013) (noting that "[w]hile [plaintiff] is correct that corporate parents have been held to be 'debt collectors' under the FDCPA, he points to no case so holding on the basis of corporate parenthood alone," and dismissing claims against NCO Group Inc. ("NCO Group"), NCOF's parent company, where complaint contained no specific allegations against NCO Group, except that NCOF was its wholly owned subsid-

iary, and where collections letters were signed by NCOF or lawyers and directed that future contact and payments be made to NCOF).[19]

The Second Circuit has not addressed the issue of whether an assignee or purchaser of a debt, who hires a third party to engage in debt collection activities on its behalf, is itself a "debt collector" under the statute. However, the Court has noted previously that the Second Circuit recognizes the "FDCPA's broad, pro-debtor objectives," when resolving ambiguities in the text of the FDCPA. *Alibrandi v. Fin. Outsourcing Servs., Inc.,* 333 F.3d 82, 87 (2d Cir.2003); *see also Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir.1989) ("It is clear that Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices.")

■ Here, the evidence on the record indicates that NCOP is in the business of regularly purchasing millions of defaulted debts and collecting on them by, at the very least, hiring debt collections law firms and filing debt collection actions in state court. Specifically, Plaintiff relies on the Noah testimony that Defendant has thousands of employees, approximately 9,000 of whom are debt collectors, has filed over 35,000 collections lawsuits, and uses the services of 165 debt collection law firms. Although Defendant disputes the scope and nature of NCOP's debt collection activities, Defendant has failed to put forth any evidence to create a genuine issue of fact as to whether Defendant NCOP regularly partakes in debt collection or whether debt collection is its principal business.

It cannot be disputed that Defendant NCOP, through its lawyers MSH, filed and pursued the collections lawsuit against Plaintiff in its own name; in doing so, it acted principally as a "debt collector" irrespective of the actions of NCOF. Furthermore, because the FDCPA provides that a debt collector "regularly collects or attempts to collect, directly *or indirectly,* debts," 15 U.S.C. § 1692a(6) (emphasis added), the plain language of the statute accounts for situations in which a debt collector uses indirect means to collect a debt. Hiring a third party debt collection agency or law firm to assist in everyday debt collection activities falls squarely within this definition, particularly where, as here, the third party entities worked pursuant to governing procedures provided by the debt collector. (*See,* e.g., Noah Tr. 21:1–22:8.) *See also Suquilanda v. Cohen & Slamowitz, LLP,* 10 Civ. 5868, 2011 WL 4344044, at *10 (S.D.N.Y. Sept. 8, 2011).

Rather than putting forth evidence that NCOP's principal purpose is not debt collection or that it does not engage regularly in debt collection activities, Defendant repeatedly asserts that the Noah testimony upon which Plaintiff relies, as well as the Dworsak testimony, refer to NCOF rather than NCOP and that Plaintiff ignores corporate formalities distinguishing NCOP and NCOF. However, Defendant cannot escape Mr. Noah's testimony that NCOP and NCOF were "essentially the same entity" for purposes of collecting Plaintiff's debt. The scant testimony of Mr. Dworsak on this topic does little to dispute Mr. Noah's testimony. (See Def. 56.1 Stmt. ¶ 6; *see also* Dworsak Tr. 12:4–25; 106:7–12.) Nor does Defendant point to any

**19.** The Court notes that there is no information in *LaCourte* or the record in this matter about the relationship between NCO Group, Inc. and NCOP. To the extent this case suggests that the parent company of NCOF is not a "debt collector," the Court notes that the facts in the instant case support more direct involvement by NCOP, including by filing and then collecting on judgments obtained in state collections lawsuits in its own name.

other evidence in the record as to the corporate structure or relationship between NCOP and NCOF to support its conclusory statement.

It is notable that, in the almost four years of pendency of this lawsuit, Defendant has not sought to distinguish meaningfully between NCOP and NCOF. Although the Court does not deem the argument waived,[20] in addition to the evidence before the Court, Defense Counsel's actions in this litigation suggest that the two NCO entities are not distinct for the purpose of this case. For example, Defendant produced the same deponent, Mr. Noah, in response to two 30(b)(6) deposition notices directed separately to NCOP and NCOF. Additionally, in several places in its briefing on Plaintiff's Motion to Amend the Complaint and on this Motion, Defendant stated that NCOF acted "on behalf of NCOP," including when it received the March 2011 Order, and returned Plaintiff's funds. (*See* Def. Opp. to Mot. to Amend 10–12.) Defendant failed to differentiate between NCOP and NCOF in its Motion for Judgment on the Pleadings. Finally, Defendant did not seek to include this argument in its proposed Rule 12(b) motion. Nevertheless, for purposes of determining whether NCOP is a "debt collector" under the FDCPA,

the Court finds that the distinction between NCOP and NCOF is immaterial.

A number of Courts within the Circuit, including in cases involving some of the same parties involved in this dispute, have found that such debt purchasers or assignees are "debt collectors" for purposes of the FDCPA.[21] For example, in *Sykes v. Mel Harris & Assocs., LLC,* then-District Judge Chin held that, as a matter of law, defendant debt purchasers were "debt collectors" under the FDCPA. 757 F.Supp.2d 413 (S.D.N.Y.2010). Like here, Judge Chin rejected arguments that defendants' principal business was not debt collection, relying on allegations in the Complaint that "defendants [we]re principally in the business of buying defaulted debts and seeking to collect on them, as they have filed more than 100,000 debt collection actions in state courts since 2006," and that they "used interstate wires, to prepare non-military affidavits and to freeze plaintiffs' bank accounts, among other acts." *Id.* at 423; *see also Plummer,* 66 F.Supp.3d at 488–89 (rejecting argument that defendant is "not a 'direct' debt collector because it did not participate in any debt collection activity against Plaintiff ... and that it is not an 'indirect' debt collector because Plaintiff has failed to allege the interdependence or

---

**20.** Defendant's Answers to the Complaint and Amended Complaint include the boilerplate affirmative defense "Any harm suffered by plaintiff was legally and proximately caused by persons, individuals, corporations, or entities beyond the control or supervision of NCOP, or for whom NCOP is not responsible or liable." (Answer to Am. Compl. 5.)

**21.** There is no question that MSH and NCOF are "debt collectors" under the FDCPA, as Defendant does not dispute that they undertake collections activities. Additionally, they have been defendants and considered debt collectors in a number of other cases in this Circuit. *See, e.g., Sykes v. Mel Harris & Assocs., LLC,* 757 F.Supp.2d 413 (S.D.N.Y.2010)

(MSH as defendant debt collector); *Foti·v. NCO Fin. Sys., Inc.,* 424 F.Supp.2d 643, 652–70 (S.D.N.Y.2006) (NCOF as defendant debt collector); *Marisco v. NCO Fin. Sys., Inc.,* 946 F.Supp.2d 287 (E.D.N.Y.2013) (same); *Saunders v. NCO Fin. Sys., Inc.,* 910 F.Supp.2d 464 (E.D.N.Y.2012) (same); *Wood v. Capital One Servs., LLC,* No. 5:09–CV–1445, 2012 WL 4364494 (N.D.N.Y. Sept. 21, 2012) (same); *Bowens v. LR Credit 10, LLC,* No. 07–CV–459S, 2011 WL 6208303 (W.D.N.Y. Dec. 14, 2011) (MSH as defendant debt collector); *but see Crawford v. Recovery Partners,* No. 12 Civ. 8520, 2014 WL 1695239, at *3 (S.D.N.Y. Apr. 28, 2014) (MSH not a debt collector).

control necessary to establish an agency relationship," and holding that plaintiff sufficiently alleged that defendant was a "debt collector" where the complaint states that the "principal purpose of [Velocity's] business is the purchase of defaulted consumer debts originally owed or due or alleged to be originally owed or due to others," defendant "uses the mail in purchasing defaulted consumer debts, usually at a significant discount to their face value, and then seeks to collect on such debts," and defendant placed the debt with another entity for purposes of collection) (citing *Suquilanda,* 2011 WL 4344044, at *10 ("The FDCPA also recognizes that one who acquires debt merely for collection purposes is acting more like a debt collector than a creditor; thus, the Act treats assignees of debt as debt collectors if the debt sought to be collected was in default when acquired by the assignee")(internal quotations and citations omitted)); *Kinel v. Sherman Acquisition II LP,* No. 05 Civ. 3456, 2006 WL 5157678, at *6–7 (S.D.N.Y. Feb. 28, 2006) (noting that "[c]ourts have expressly held that purchasers of defaulted debt are covered by the FDCPA, without regard to their level of collection activity" and that "[c]ourts have interpreted [15 U.S.C. § 1692(a)(4)'s] language to mean that those who are assigned a defaulted debt are not exempt from the FDCPA if their principal purpose is the collection of debts or if they regularly engage in debt collection") (collecting cases) (internal quotation marks and citations omitted); *Hamlett v. Santander Consumer USA Inc.,* 931 F.Supp.2d 451, 455 (E.D.N.Y.2013) ("[W]hile it is true that the FDCPA excludes creditors from the definition of debt

collector, it is well established that 'an assignee of a debt that is in default at the time the debt was obtained is considered a debt collector for purposes of the FDCPA.' ")(internal citation omitted); *Farber v. NP Funding II L.P.,* No. CV–96–4322 (CPS), 1997 WL 913335, at *5 (E.D.N.Y. Dec. 9, 1997) ("It is clear that NP Funding engages in some debt collection because it commenced a foreclosure action against plaintiff and at least one other individual. Despite defendants' contention, litigation is one form of debt collection and is governed by the FDCPA.")(citing *Heintz v. Jenkins,* 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995)).

In arguing that NCOP is not a "debt collector," Defendant ignores relevant case law in this Circuit, and instead reaches to find support for its argument by relying on a district court case from the Northern District of Illinois, *Kasalo v. Trident Asset Mgmt., LLC,* 53 F.Supp.3d 1072 (N.D.Ill. 2014).[22] The Seventh Circuit has made clear that "an agency in the business of acquiring and collecting on defaulted debts originated by another is a debt collector under the FDCPA even though it actually may be collecting for itself." *McKinney v. Cadleway Props., Inc.,* 548 F.3d 496, 502 (7th Cir.2008). Even if *Kasalo* were binding on this Court, which it is not, of course, the debt purchaser here, NCOP, had significantly more involvement in debt collection activities than its equivalent in *Kasalo.*

To the extent that Defendant's argument "conflate[s] the question of whether an entity is a debt collector under the

---

**22.** In *Kasalo,* the Court found that there was a dispute of fact as to whether the defendant debt purchaser regularly collected debts or whether its principal purpose was debt collection because its third party debt collector sent all letters and made all phone calls on its

behalf. The Court held that "[a]n entity that acquires a consumer's debt hoping to collect it but that does not have any interaction with the consumer itself does not necessarily undertake activities that fall within [the FDCPA's] purview." *Id.* at 1078–79.

FDCPA with the question of whether one debt collector can be found vicariously liable for the conduct of another acting on its behalf," courts in this Circuit have "recognized that determining whether an entity is a debt collector requires a separate analysis before vicarious liability may be addressed." *Plummer,* 66 F.Supp.3d at 488–89 (citing *Suquilanda,* 2011 WL 4344044, at *4, *10–11). Accordingly, the Court will address the separate issue of vicarious liability below.

Thus, the Court finds that, as a matter of law, based on the undisputed facts on the record, Defendant NCOP is a "debt collector" under the FDCPA.

ii. Liability Under the FDCPA

The determination that NCOP is a "debt collector" does not end the matter as to FDCPA liability. Plaintiff is correct that earlier rulings in this case, combined with the Court's ruling today, hold that Plaintiff has alleged sufficient facts to state a claim against Defendant NCOP under the FDCPA. However, to succeed at the summary judgment stage, Plaintiff must show that undisputed facts on the record prove those claims.

1. NCOP's Actions and Omissions

Plaintiff claims that Defendant NCOP violated the FCDPA by (a) obtaining a judgment against her using sewer service, and (b) refusing to return her funds for an unreasonably long period of time after the Bronx County Civil Court vacated the default judgment against her and later ordered her funds to be returned "forthwith."

■ As to the first claim, the Court finds that there are genuine issues of material fact as to whether the default judgment against Plaintiff was obtained using sewer service. The November 2010 Order vacating the default judgment found that Plaintiff had "shown excusable default and a meritorious defense." However, Plaintiff had raised a number of defenses, including that she had never been served and that the Affidavit of Service was false, but also that she did not owe the debt, was the victim of identity theft, and that the statute of limitations had expired. The Order did not specify which defense it found to be meritorious. Plaintiff's evidence for her assertion that she was never served are her own Affidavits, made in support of the original Order to Show Cause and in this matter. Defendant argues that the Affidavit of Service in the collections lawsuit refutes Plaintiff's Affidavits. Based on this minimal evidence, a reasonable juror could find in favor of either party as to whether sewer service occurred.

■ As to the second claim, the Court previously held that Defendant's "ten-month refusal to comply with two Court Orders that vacated a fraudulently received judgment falls within FDCPA's broad purpose." (ECF No. 21, at 10.) The Court now finds that based on the facts on the record, Plaintiff is entitled to judgment as a matter of law.

It is undisputed that NCO was aware that Plaintiff had filed the Order to Show Cause in November 2010, MSH had a copy of the March 2011 Order by early April 2011, an NCO entity had possession of the March 2011 Order on April 14, 2011, and that the NCO entity forwarded the Order to S & L on April 15, 2011. It is also undisputed that S & L told an NCOF compliance officer to return the funds on August 2, 2011, which it did on August 26, 2011.

Although there are disputes of fact as to which law firm represented Defendant after January 2011, as well as which NCO entity had knowledge of the Orders and possession of the funds, these disputes of fact are immaterial. There is no question

that an NCO entity, and both sets of Defendants' attorneys, MSH and S & L, had copies of the two Orders first vacating the default judgment and then unequivocally requiring return of Plaintiff's funds "forthwith" by April 2011. As to any dispute about whether NCOP and NCOF are distinct entities and what separate role NCOF may have played in holding and ultimately returning the funds to Plaintiff, the Court finds it is immaterial. As noted above, Defendant has presented no evidence to dispute the testimony of its deponent that NCOP and NCOF were "essentially the same entity." Furthermore, NCOP was plaintiff in the original collections lawsuit, and was the subject of the November 2010 and March 2011 Orders, so even if NCOF had physical possession of Plaintiff's funds, it did so, as Defendant noted in its briefing on the Motion to Amend, on behalf of NCOP.

Defendant asserts that it cannot be held liable because any delay in returning the funds was attributable to its waiting for counsel's advice as to how to proceed. The Court will address this argument in the discussion below regarding vicarious liability.

2. Vicarious Liability for MSH's Actions

■ Additionally, the Parties seek summary judgment with respect to Defendant NCOP's vicarious liability for actions taken by MSH.[23]

As a general matter, the Supreme Court has made clear that "clients must be held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396–97, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). As in *Link*, Defendant here "voluntarily chose this attorney as [its] representative in the action, and [it] cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' " 370 U.S. at 633–34, 82 S.Ct. 1386 (internal citation omitted).

■ Additionally, though the Second Circuit has not ruled on the issue, Courts in this Circuit and other Circuit Courts have concluded that principals or corporate parents may be held vicariously liable for their agents' or subsidiaries' actions that violated the FDCPA where the principals are themselves "debt collectors."[24] In *Suquilanda*, Judge Castel explained that "[g]eneral principles of agency law form the basis of vicarious liability under the FDCPA." 2011 WL 4344044, at *4. Judge Castel went on to cite our sister Circuits for the premise that a principal

---

23. Again, Plaintiff does not seem to raise vicarious liability as to NCOF, instead arguing that NCOP and NCOF are not distinct entities. *See, supra* note 1. Because vicarious liability is addressed with respect to Defendant's attorneys, the Court views this argument as extending to S & L to the extent that a jury were to find that S & L was Defendant's counsel.

24. The Second Circuit has made clear that the FDCPA's inclusion in the definition of "debt collector" a creditor who "uses any

name other than his own which would indicate that a third person is collecting or attempting to collect such debts," the so-called false name exception, "does not create backdoor vicarious liability for creditors simply because the collection agencies they hire to collect their debts engage in deceptive practices." *Vincent*, 736 F.3d at 99. However, this exception does not apply here because NCOP is not a creditor falsely using a third party's name, but rather an assignee collecting in its own name through its attorneys.

which itself meets the definition of "debt collector" may be held liable for its agent's actions when they violate the FDCPA. *Id.* (citing *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404–05 (3rd Cir.2000) ("Thus, we conclude that NTF—which itself meets the definition of 'debt collector'—may be held vicariously liable for CARC's collection activity. We believe this is a fair result because an entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf.")). Additionally, "vicarious liability may attach in the context of an attorney-client relationship where both the attorney and its client constitute 'debt collectors' under the FDCPA." *Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 508, 516 (S.D.N.Y. 2013) (citing *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1515–16 (9th Cir.1994) ("In order to give reasonable effect to section 1692i, we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.")); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 600–01, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) ("Some courts have held clients vicariously liable for their lawyers' violations of the FDCPA.") (citing *Fox* ).

District Courts in this Circuit disagree about the appropriate test for determining when a principal may be held vicariously liable for its agent's actions under the FDCPA, particularly where that agent is an attorney. Some Courts require that a debt collector "exercise control" over the attorney, while others require only that the agent be acting "within the scope their authority." *Compare Okyere,* 961 F.Supp.2d at 515–17 (discussing various tests for vicarious liability under FDCPA and holding that "scope of authority" is the appropriate test); *with Bodur v. Palisades Collection, LLC,* 829 F.Supp.2d 246, 259 (S.D.N.Y.2011) ("To be vicariously liable under the FDCPA, however, 'the principal must exercise control over the conduct or activities of the agent.' ")(citing *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1173 (9th Cir.2006)); *see also LaCourte,* 2013 WL 4830935, at *5–6 (declining to find vicarious liability where plaintiff "simply has not plausibly alleged a manifestation by the principal that the agent shall act for him, accept[ance of] the undertaking by the agent, or an understanding between the parties that the principal is to be in control of the undertaking," nor has plaintiff sufficiently alleged facts to support the "doctrine of apparent authority, whereby a principal may be liable for the unlawful conduct of another if the principal gives the appearance that the wrongdoer has authority to act on behalf of the principal, and a third person, accepting the appearance of authority as true, has relied upon it.") (internal quotations and citations omitted).

In various places in Defendant's briefing, it seems to both concede and contest whether vicarious liability applies to Plaintiff's claim of sewer service. (*Compare* Def.'s Mot. 18 ("To the extent the service was improper, MSH is liable for it, and NCOP's liability is vicarious. Moreover, to the extent there was a delay in refunding the garnishment proceeds, it was MSH that was aware of the existence of the refund order, not NCOP.") *with* Def.'s Opp. to Pl.'s Mot. 7, n. 3 ("Plaintiff's entire claim of vicarious liability assumes, without any evidence, that MSH was the agent of NCO Portfolio Management, Inc. Plaintiff's argument is just and only that—as plaintiff has failed to demonstrate or produce any evidence that MSH was the agent of NCO Portfolio Management, Inc., or that NCO Portfolio Management, Inc. exercised the requisite control over MSH

to create the agency relationship."))  As to Plaintiff's second claim regarding delay of return of her funds, Defendant argues that it had no direct involvement with Plaintiff and that, in any case, any delay was attributable to its waiting for counsel's advice about how to proceed.  The Court construes both of these arguments as stemming from vicarious liability.

Insofar as Defendant is challenging whether NCOP is vicariously liable for MSH's actions, the Court agrees with sister Courts in this Circuit and the Third and Ninth Circuits that the "broad, prodebtor objectives" of the FDCPA, *Alibrandi*, 333 F.3d at 87, are served by imputing a debt collection attorney's actions onto its client and placing on a debt collector the "burden of monitoring the activities of those it enlists to collect debts on its behalf."  *Pollice*, 225 F.3d at 404–05.  Although the Court recognizes that Defendant has argued that it was NCOF, rather than NCOP, that retained MSH, the undisputed evidence shows that MSH filed and litigated the collections lawsuit in NCOP's name.  Thus, Defendant cannot argue in good faith that MSH was not NCOP's attorney and agent at the time the alleged sewer service occurred.  Additionally, Defendant has provided no additional evidence to refute Plaintiff's evidence that the NCOP and NCOF were "essentially the same entity" for the purpose of collecting on Plaintiff's account, including during the period after the two Orders vacated the default judgment.

Further, although this Court need not decide which test of vicarious liability applies, Mr. Noah testified that NCO provided to MSH, and its 165 debt collection law firms, operating procedures they were required to follow and that there was a system in place for MSH to report back to NCO about the activities and events in a case.  Defendant has put forth no evidence

to refute that NCOP either exercised control over MSH or that MSH was acting within the scope of its employment.

In contesting liability under the FDCPA, Defendant argued that any delay in returning Plaintiff's funds was attributable to its waiting for consultation from its attorney.  (Def. Opp. to Pl.'s Mot. 16–17; Def. Mot. 21.)  However, as Judge Freeman noted in her Order on the Motion to Amend, even if that were the reason Defendant delayed in returning Plaintiff's funds, whether that reason is sufficient to absolve Defendant of liability is a matter of law.  This Court finds that it is not.  Whether the delay in returning funds resulted from confusion about who was counsel of record, NCOP's failure to ask explicitly for legal advice about the Orders, counsel's errors in analyzing the Orders, or simply dilatory review of the Orders by the attorney of record, Defendant is either vicariously or directly liable for that error or delay.  The law is clear that "clients must be held accountable for the acts and omissions of their attorneys."  *Pioneer Inv. Servs. Co.*, 507 U.S. at 396–97, 113 S.Ct. 1489.  Thus, waiting for advice from counsel does not absolve Defendant of liability here.  This is especially true given that Defendant presents no evidence that it sought legal advice or checked in with its attorneys about the Orders between, at a minimum, November 2010 and April 2011, and then again between April 2011 and July 2011.

The core of Defendant's argument is not whether NCOP could be vicariously liable, but that Plaintiff is not entitled to summary judgment based on vicarious liability because (a) there are genuine issues of material fact as to whether sewer service occurred, and (b) Plaintiff cannot recover again from NCOP when she has already settled with and recovered from MSH for the same underlying conduct.  (Def.'s Mot.

17–18; Def.'s Opp. to Pl.'s Mot. 5–6.) The Court agrees with the first argument, but rejects the second.

As noted above, there are genuine issues of fact as to whether sewer service occurred, that is, a reasonable jury could find Plaintiff's statements that she was never served credible, or could credit the Affidavit of Service that she was. Thus, a jury must resolve those disputes.

■ Nevertheless, the Court rejects Defendant's second argument. Defendant argues that "after settlement with the agent, plaintiff 'may not pursue identical claims against the principal,'" (Def.'s Mot. 18) (quoting *Nelson v. Cavalry Portfolio Services, LLC*, 09–cv–00677, 2010 WL 1258045 (D.Colo. Mar. 24, 2010)) because it would violate "the well-established rule that actions against both a principal and an agent 'cannot result in inconsistent judgments against the agent and the vicariously-liable principal.'" (*Id.* (citing *Nelson* and *Restatement (Second) of Agency*, § 217(b)(1958)).) For the reasons stated by Plaintiff, *Nelson* is inapposite to this case, and Defendant's argument is wholly without merit.

First, Plaintiff's claims against NCOP are not identical to those against MSH. Plaintiff's claims continue beyond January 2011, the point at which Defendant claims it terminated MSH; she sues not only for conduct related to sewer service, but also the delay in returning her funds after two Court Orders. Second, the settlement with MSH does not constitute a judgment against it, nor was it obtained after an Offer of Judgment pursuant to Rule 68 as it was in *Nelson*. Thus, none of the concerns about achieving inconsistent judgments are present here. Indeed, although the Court approved Plaintiff's voluntary dismissal of the case against MSH, the Court records indicate nothing about the content of the settlement. (*See* ECF No. 13.) Therefore, the Court has no basis for concluding that MSH admitted liability, nor that the settlement cured all of Plaintiff's injuries such that she would recover doubly if allowed to proceed against NCOP. Additionally, the Stipulation of Dismissal explicitly stated that the "dismissal does not prejudice plaintiff's right to continue this action against remaining defendant NCO Portfolio Management, Inc." (*Id.*) NCOP cannot now argue that the settlement did just that.

Accordingly, because there are genuine issues of material fact as to whether sewer service occurred, summary judgment on vicarious liability for the alleged sewer service as to both Parties is DENIED. However, the Court finds that, as a matter of law, Defendant is vicariously liable for the actions of MSH with respect to the delay in the return of Plaintiff's funds, and the fact that Plaintiff settled with MSH does not preclude Plaintiff from seeking additional recovery from Defendant. Thus, summary judgment in favor of Plaintiff is GRANTED in part.

### c. Conversion

■ As the Second Circuit has noted, under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir.2006) (internal quotations and citation omitted). "Although in general '[o]ne is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face,' ... the actor has no such privilege when he has procured the order by means of an intentional misrepresentation to the issuing authority." *Calamia v. City of New York*, 879 F.2d 1025, 1031 (2d Cir. 1989) (citing *Restatement (Second) of*

*Torts* § 266 (1965)). Additionally, "[i]f possession of the property is originally lawful, a conversion occurs when the defendant refuses to return the property after a demand or sooner disposes of the property." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.,* 87 F.3d 44, 49–50 (2d Cir.1996) (citing *White v. City of Mount Vernon,* 221 A.D.2d 345, 633 N.Y.S.2d 369, 370 (1995)). "The reason for this rule is simply that one in lawful possession shall not have such possession changed into an unlawful one until he be informed of the defect of his title and have an opportunity to deliver the property to the true owner." *Id.* (quoting *Employers' Fire Ins. Co. v. Cotten,* 245 N.Y. 102, 156 N.E. 629, 630 (1927))(internal quotation marks omitted). "But where the defendant holds the property unlawfully—where, for example, he stole the property—'no demand and refusal are necessary to render the defendant liable.'" *Id.* (citing *Nat Koslow, Inc. v. Bletterman,* 23 Misc.2d 340, 197 N.Y.S.2d 583, 586 (N.Y.Sup.Ct.1960)). In other words, "demand is excused where the defendant is not an 'innocent purchaser' of property, but instead is 'a wrongdoer.'" *Frink Am., Inc. v. Champion Rd. Mach. Ltd.,* 2000 WL 754945, at *2 (2d Cir.2000) (citing *Leveraged Leasing,* 87 F.3d at 50).

In analyzing the demand-and-refusal rule, New York Courts have noted that "[a] demand need not use the specific word 'demand' so long as it clearly conveys the exclusive claim of ownership.... By the same reasoning, a refusal need not use the specific word 'refuse' so long as it clearly conveys an intent to interfere with the demander's possession or use of his property." *Feld v. Feld,* 279 A.D.2d 393, 720 N.Y.S.2d 35, 37 (2001). Therefore, "a court must analyze the actions as well as his words of a person who receives a demand before deciding whether and when it

was refused. If either the recipient's words or actions evidences 'an intent to interfere with the demander's possession or use of his property,' ... which is an 'overt and positive act of conversion,' ... then the demand has been refused and the cause of action accrues, even if the words 'I refuse your demand' were not explicitly used." *Grosz v. Museum of Modern Art,* 772 F.Supp.2d 473, 483–84 (S.D.N.Y.2010) *aff'd,* 403 Fed.Appx. 575 (2d Cir.2010) (internal citations omitted).

In addition, Defendant's lack of good faith is not required to succeed on a conversion claim. *See New York City Transit Auth. v. New–York Historical Soc'y,* 167 Misc.2d 31, 635 N.Y.S.2d 998 (N.Y.Sup.Ct.1995), *order aff'd,* 237 A.D.2d 419, 656 N.Y.S.2d 731 (N.Y.App.Div.1997). ("A transfer may be wrongful and constitute a conversion even where the defendant acted in good faith."). Finally, "[a] claim for conversion will exist even when the deprivation is partial or temporary." *Slue v. New York Univ. Med. Ctr.,* 409 F.Supp.2d 349, 364 (S.D.N.Y.2006) (citing *Pierpoint v. Farnum,* 234 A.D. 205, 254 N.Y.S. 758, 763 (1931) ("Conversion does not necessarily imply a complete and absolute deprivation of property. There may be a deprivation which is only partial or temporary.... [T]he plaintiff has a right to damages flowing from the wrongful withholding—either by way of expense incurred, profits lost, or otherwise.")).

In the instant case, Plaintiff claims that she is entitled to summary judgment as to conversion because Judge Freeman held that the allegations in the Amended Complaint made out a claim for conversion, and that the undisputed facts now support that claim. (Pl.'s Mot. 12–14.) On the other hand, in its Opposition to Plaintiff's Motion and its own Motion for Summary Judgment, Defendant asserts that Plaintiff's conversion claim fails as a

matter of law. (Def.'s Opp. to Pl.'s Mot. 14; Def.'s Mot. 19.) Plaintiff is correct that Judge Freeman held that Plaintiff had stated a claim for conversion assuming the facts alleged in her Amended Complaint to be true. Defendant's argument here is largely repetitive of the its Opposition to the Motion to Amend, and Defendant has raised no new legal basis upon which this Court could or should reconsider Judge Freeman's ruling that Plaintiff stated a claim for conversion as a matter of law.

As to whether Plaintiff has proved the elements of conversion, the Court finds that based on the undisputed facts on the record, she has. Defendant's arguments here mirror its claims regarding liability under the FDCPA, namely, that it was NCOF and the collection attorneys that directly interacted with Plaintiff, not NCOP, and that it did not "refuse" to return Plaintiff's property, but rather waited for instruction from its attorneys to do so, and then did once it got that instruction. Again, the Court rejects Defendant's argument that NCOP was not sufficiently involved in the collection of Plaintiff's debt to be held liable. Defendant has pointed to no facts on the record that NCOP and NCOF are distinct entities or refuting that NCOP was a party to the collections suit and thus subject to the November 2010 and March 2011 Orders.

The record shows that the Marshal collected on Plaintiff's default judgment in 2006, and thereafter, that NCO and/or MSH had possession of the funds. The determination of when that possession became unauthorized depends on whether a jury finds that sewer service occurred. As noted earlier, although "[a]n act which would otherwise constitute conversion is privileged when it is committed pursuant to a court order valid on its face," that principle does not hold where the order was obtained based on fraud. *See Cala-*

*mia,* 879 F.2d at 1031. Thus, if a jury were to find that sewer service occurred, then the conversion would have been initiated at the time Defendant took possession of Plaintiff's funds in or around 2006 through the fraudulently obtained default judgment. Further, the demand-and-refusal rule would not apply.

However, even if a jury did not find sewer service occurred, lawful possession of property can be become conversion once a Plaintiff demands return of the property and the Defendant refuses. Here, the facts on the record demonstrates that Plaintiff demanded return of her property through the Orders to Show Cause and subsequent Orders obtained in the Bronx County Civil Court vacating the default judgment. Plaintiff also forwarded those Orders to MSH. Defendant's failure to comply with two Court Orders, the second of which warned of contempt of Court for failure to comply, is sufficient to constitute refusal. To the extent NCOP claims it did not have notice of the Orders because NCOF and/or MSH had them, the Court rejects that argument for the reasons stated above in the discussion of FDCPA vicarious liability.

Additionally, as to Defendant's argument that its waiting for counsel's advice does not constitute "refusal," the Court rejects that argument as well. The record is unclear as to which firm was representing Defendant at the time. However, that disputed fact is immaterial because on any set of facts, Defendant is not absolved of liability: either Defendant had no engaged law firm and thus has no one to blame but itself for failing to comply with the Orders, or whichever counsel it had erred or was tardy in reviewing the Orders, which error is imputed to Defendant, as discussed above. The fact that the funds were ultimately returned does not render the withholding not conversion. When the

withholding became unauthorized, and the duration of the unauthorized withholding, both of which bear on Plaintiff's damages, are questions of fact to be determined by a jury. However, the Court finds that based on the undisputed facts on the record, Plaintiff has proven conversion as a matter of law.

Accordingly, Defendant's Motion for Summary Judgment with respect to conversion is DENIED. Plaintiff's Motion for Partial Summary Judgment as to conversion is GRANTED as to liability but issues of fact remain as to damages.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is DENIED. Plaintiff's Partial Motion for Summary Judgment is GRANTED as to whether Defendant is a "debt collector" under the FDCPA, and as to liability for FDCPA and conversion claims related to the delay in returning Plaintiff's funds. Plaintiff's Motion is DENIED as to liability for sewer service.

Joint Pre–Trial Statement shall be submitted by November 20, 2015. Proposed Requests to Charge and Proposed Voir Dire shall be submitted by November 20, 2015. Memoranda of Law addressing those issues raised in the Joint Pre–Trial Statement shall be submitted by November 20, 2015. Responses to the Memoranda shall be submitted by December 7, 2015. There shall be no replies. These submissions shall conform to the Court's Individual Practices.

SO ORDERED.